HUMBLE OIL & REFINING CO. v.
MARTIN et al.

No. 9738.

Court of Civil Appeals of Texas. Austin.

Dec. 8, 1948.

Rehearing Denied Dec. 31, 1948.

Hart, Brown & Sparks and Looney & Clark, all of Austin, for appellant.

John D. Cofer and J. L. McGarity, both of Austin, for appellees.

HUGHES, Justice.

A personal injury suit in which appellee George F. Martin, for himself and as next friend for his two minor daughters, sued Humble Oil and Refining Company and Mr. and Mrs. A. C. Love for damages for personal injuries sustained by the three Martins on May 12, 1947, when an automobile owned by the Loves rolled, unoccupied, from a Humble filling station located at West 12th Street and West Avenue, in the City of Austin, across 12th Street, over the curb on the south side of 12th Street and on to the Martin property, where it struck Mrs. Martin and his two daughters.

Upon a special issue verdict returned by the jury, money judgments, in varying sums, were rendered for the three Martins against the Humble and Mrs. A. C. Love, jointly and severally. Judgment in favor of Mrs. Love, over and against the Humble was rendered for the recovery of any sums which she might pay on the Martin judgments.

Humble appeals from the judgment generally. Mrs. Love appeals only from that

portion of the judgment in which the Martins recovered against her.

Humble disclaims any and all liability on the ground that no act of negligence, alleged or proved, is attributable to any of its employees, agents or representatives. Thus it puts in issue the nature of the legal relationship existing between Humble and the persons who operated or were employed in the filling station.

The basic facts, either undisputed or found by the jury, are:

Humble owns the filling station which is operated by W. T. Schneider under a written "commission agency agreement" in which Humble is designated as "Company" and Schneider as "Agent," the material parts of which follow:

" 'Agent' agrees:

"1. * * * To sell and distribute through said station the goods and products supplied by Company; to collect all moneys that may be due the Company for goods sold by him; to look after and properly care for all property of the Company that may be placed in his charge, keep the service station premises in a clean, healthful and attractive condition to the satisfaction of the Company's representative, and display properly all advertising matter supplied him; to make reports and perform other duties in connection with the operation of said station that may be required of him from time to time by Company; and faithfully and accurately to account for all funds, goods, products and property of every kind belonging to Company coming into his possession or under his control. * * *

"2. Agent shall hire, at his expense, such laborers and assistants as shall be necessary in accomplishing the purposes of his agency hereunder, such laborers and assistants to be his employe's, and subject only to his control and direction, and for whose acts and conduct, and the losses and damages resulting therefrom, Agent shall be responsible and liable. Agent shall not employ any person for or on behalf of the Company, except by special written permission of Company, and then only to perform the work designated in writing. Agent shall pay all expenses incident to the proper operation and maintenance of said service station, including, without limiting the foregoing, expense of gas, electric light and power, telephone, fuel, ice and water.

"3. All sales made by Agent shall be at the prices fixed by Company from time to time and shall be for cash only or at credit on such time, in such amounts and to such customers only as may be specifically authorized by Company in writing.

"4. Agent agrees to remit to Company daily all amounts collected by him for goods sold and all other amounts due by him to Company, unless otherwise instructed in writing. * * *

* * * * * *

"6. In full payment for all sales made and all services performed by Agent and his employees hereunder, Company agrees to pay Agent commissions per schedule * * * attached. * * *

* * * * * *

"It is distinctly understood that such business as the Agent shall conduct in his own right shall be at his own risk and expense; that the business to be conducted by him shall be of a character to be approved by the Company in writing, and that Agent's conduct of such business shall in nowise interfere with the Company's business in the sale of its products at such station. Agent agrees that except as so authorized in writing by Company said station premises shall be used exclusively for the storage, advertisement and sale of Company products and that no petroleum products other than those supplied him by Company shall be kept or sold on such premises.

"8. This appointment and all arrangements for the rent of space for use in Agent's own business provided for in the preceding paragraph are revocable at the will of Company, with or without cause, and Agent will be entitled to commissions only on moneys collected and remitted prior to the termination of his agency."

Besides the agent, Schneider, there were only two persons employed in the station, W. V. Manis and a Negro, Dan Pete Robinson, each of whom testified that Schneider hired and paid him, instructed each as to his duties, and was his only boss.

Only Humble petroleum products were sold by the station.

The cement floor space of the station covers substantially all of the station area except the office. There are four gasoline pumps on a platform elevated above the surrounding cement driveway; this platform is 27 feet long, runs east and west, and there is space between it and the office for two cars.

The driveway surrounding the pump platform is sloping; the slope from east to west is 6 inches or a drop of 2 inches between the front and rear wheels of an ordinary automobile parked on this area. Westward and south from the west end of the pump platform the slope towards 12th Street is more abrupt. These slopes are apparent to the naked eye.

About noon on May 12, 1947, Mrs. Love drove her car into the Humble station from West 12th Street, stopping in the outside lane south of the pump platform, between the pumps and about 2 feet from and parallel with the pump platform. The car was then facing southwest toward 12th Street.

At this time there were three cars on the inside lane between the pump platform and the office. Manis, the only employee then present, was servicing one of these cars which belonged to Frank Knight. Mrs. Love, while seated in her car, told Manis she wanted a change of oil and the car greased. Manis replied, "Pete is not here, but as soon as he comes back, I will give him the job of fixing your car." Mrs. Love continued to sit in her car for a few minutes when she said to Manis, "I want to get some groceries at the store; will it be all right to leave my car here and go get them," and Manis replied, "that is perfectly all right; leave it right where it is and I will have Pete get it as soon as he gets back." Mrs. Love then killed the motor, put the car in reverse gear and left the station. She did not set the hand brake. The gears and clutch of the Love car were shown to be in good condition.

No one is shown to have touched the Love car from the time Mrs. Love left it until it was seen to slowly commence rolling. Manis was in the office when he saw the Love car crossing 12th Street. This,

according to his testimony, was two or three minutes from the time Mrs. Love told him she was going to the store.

Manis testified that during the three years he had worked at this station it was the practice of customers to set the brakes or engage the gears on cars to prevent them from rolling.

Humble's pleading upon which it went to trial contained these allegations:

"Specially answering, this defendant says that a few minutes prior to the accident described in plaintiffs' amended petition, Mrs. A. C. Love drove her car into this defendant's filling station and stopped it on the cement platform South of the gasoline pumps, and asked permission to leave her car at said place until this defendant's employee should complete the work which he was doing on other cars and could service Mrs. Love's car. This defendant's employee gave Mrs. Love the permission she requested. Mrs. Love thereupon got out of her car and left it unoccupied at the place where she had stopped it, knowing that this defendant's employee could not give attention to her car until after he had finished the work he was going on another car. None of this defendant's employees touched or came into contact with or did or caused anything to be done to Mrs. Love's car at any time after she drove it into this defendant's station on the occasion in question. * * *

"* * * upon this occasion this defendant's employee at said station assumed and believed, and had the right to assume and believe, that Mrs. Love had followed this custom and practice and had exercised due care to fix her car so that it would remain parked where she had left it, * * *."

By trial amendment Humble substituted for paragraphs 5 and 6, in which the above quoted allegations were contained, a pleading which omitted the admissions that the persons working at the station were its employees and specially denied that any such person was on the occasion in question its employee, agent or representative.

The jury found Humble guilty of the following acts of negligence which proximately caused the injuries complained of:

(a) Failing to inspect the Love car to see that the brake was set or the gears engaged; (b) failure to set the brake on the Love car; (c) leaving the Love car unattended on its driveway.

The jury found Mrs. Love was guilty of negligence in failing to set the emergency brake on her car.

None of the acts of negligence of either Humble or Mrs. Love was found by the jury to be the sole proximate cause of the injuries to the Martins.

The jury negatived unavoidable accident as to Humble and Mrs. Love.

No issues were submitted to the jury and no request for the submission of any issues was made concerning the legal relationship which existed between Humble and the persons employed in the filling station. Nor did Humble plead that Schneider was an independent contractor.

The implied finding of the court in support of its judgment is that the relationship of master and servant existed between Humble and the persons referred to. The evidence is sufficient to support this implied finding.

There was offered in evidence pleadings of Humble, portions of which are copied above, in which Humble alleged that the persons employed in the station were its agents and employees.

The evidence also shows that a Mr. Ellis, who has supervision of all Humble stations in Austin, "works" with the station operator as to when the station should open and close, takes periodic inventories of stock in the station, and had transferred the Negro, Pete, from employment at the Humble warehouse to a Humble station on 19th Street, in Austin.

We have set out the principal provisions of the agreement between Humble and its agent Schneider and will not repeat them. They clearly show that Humble employed Schneider to conduct its own business at this station which Humble owned and that it was contemplated by the parties that Schneider would need assistance in performing his duties under such contract.

A master is liable for acts done by one whom the servant employs with express or implied authority from the master. 57 C.J.S., Master and Servant, § 564, page 280; Gibson v. Texas Company, Tex.Civ. App., El Paso, 20 S.W.2d 349, Writ Dis.

Schneider was authorized by Humble to employ help but only with its written permission, which was not obtained. The contract also provided that Schneider was to be responsible for the acts and conduct of anyone employed by him. It is not shown that the Martins had notice of these provisions of the contract.

This station was owned and operated by Humble. The three persons who worked there were engaged, partly at least, in furthering the business of Humble and, while so engaged, were ostensibly Humble's agents. These provisions of the contract, while binding as between Humble and Schneider, cannot be used by Humble to deny or refute a relationship which was obvious and apparent to the public and which Humble had permitted to continue for a period of years. Humble knew or should have known that Schneider had employed help to assist in the conduct of Humble's business, and it has acquiesced in and ratified their employment. 57 C.J.S., Master and Servant, § 564, page 280.

Humble could not contract away, insofar as third persons are concerned, its liability for negligence of its agents. 10 Tex.Jur., Sec. 130, p. 220.

Our above conclusions find strong support in Gulf Refining Co. v. Rogers, Tex. Civ.App., Waco, 57 S.W.2d 183, Writ Dis., and Texas Co. v. Freer, Tex.Civ.App., Waco, 151 S.W.2d 907, 910, Writ Dis. Cor. Judgment.

Humble's second and third points are that the acts of negligence which the jury found it guilty of were not, as a matter of law, the proximate cause of the Martins' injuries and that the negligence of Mrs. Love, as found by the jury, was, as a matter of law, the sole proximate cause of such injuries.

We are unable to agree with either contention.

Humble owned and operated this station, the driveways of which were sloping. The general public was invited to patronize the station by Humble in order that its products

might be sold. Humble knew, or should have known, that unoccupied cars parked in this station would roll unless they were properly secured.

Mrs. Love drove her car in this station for the purpose of purchasing products sold by Humble. The attendant was busy and could not give her immediate service and, with his permission, Mrs. Love left her car in the custody of this attendant. She put the car in gear but failed to set the emergency brake. Humble failed to inspect the car to see if it were properly secured. The car rolled away and caused injuries to the Martins.

■ It is not at all unreasonable to require the owner and operator of a filling station to so conduct its business that cars left with it for service and entrusted to its care do not roll off, across the street, and on to another person's property. If Humble had taken precautions, which it did not, to see that the Love car was properly secured, the injuries to the Martins would not have occurred and this negligence was a proximate cause of such injuries.

■ On the other hand, if Mrs. Love had set the emergency brake on her car such injuries would have been prevented. This negligence was also a proximate cause of the injuries. It was the combined negligence of both Humble and Mrs. Love which allowed this car to roll away and the negligence of neither was the sole proximate cause of the injuries. They were joint tort-feasors. 30 Tex.Jur., p. 776; Baylor University v. Bradshaw, Tex.Civ. App., Austin, 52 S.W.2d 1094, affirmed 126 Tex. 99, 84 S.W.2d 703.

■ Humble requested, and was denied, submission of the following special issue: "From a preponderance of the evidence, what period of time do you find elapsed between the time Mrs. Love got out of her car to go to the grocery store and the time Mrs. Love's car rolled from the place where she had left it?"

Submission of this issue was properly refused. Humble did not raise this issue by any affirmative pleading. The controlling ultimate issues, plead by the parties,

were submitted and the issue requested was but an evidentiary fact which was embraced within the issues submitted. Rule 279, Texas Rules of Civil Procedure.

The jury having found that when Mrs. Love left her car she did not fail to properly place the gears of her car in reverse to prevent it from rolling and that the gears of her car were not defective, Humble contends that its failure to examine the car could not be the cause of the car rolling because, had the car been inspected, it would only have been discovered that the car was in such condition that it could not roll.

■ Since the car did roll the finding of the jury that the gears were in reverse is almost incredible. It must have been a very peculiar car. The judgment is predicated, however, upon the failure of Mrs. Love to set the emergency brake and the failure of Humble to see that it was set. These acts of negligence were pleaded disjunctively from the allegations concerning the gears and having been found for the Martins they furnish independent grounds to sustain the judgment.

■ The following special issue was submitted to the jury over objections of Humble: "Do you find from a preponderance of the evidence that the defendant Mrs. A. C. Love had delivered her car to the custody of the defendant Humble Oil & Refining Company, before her car started rolling from the position in which she had parked it."

It is contended that this issue submits a question of law and not of fact and that its submission was prejudicial in that it impressed the minds of the jurors with the fact that Mrs. Love was not present when the car rolled away.

The facts concerning this issue, hereinabove stated, were undisputed, and, in our opinion, showed delivery of the car to Humble as a matter of law. This issue need not have been submitted. We are unable to discern any prejudice to Humble. The most that submission of this issue did was to tend to create a doubt in the minds of the jurors concerning a matter about which no doubt existed. The effect of this, if any, was favorable to Humble.

Lastly, Humble complains of that portion of the judgment which decreed that Mrs. Love should recover of Humble any amounts which she might be required to pay on the Martin judgments.

The jury found that Humble was negligent in failing to warn Mrs. Love that the driveway where she parked her car was not level, but that this negligence was not the proximate cause of the Martins' injuries. Also the jury found that Mrs. Love, "in leaving her car on the driveway, under the facts and circumstances then existing," was not negligent.

In our opinion the right to indemnity does not exist. The negligence of Humble and Mrs. Love was passive. If Mrs. Love had set the brake on her car it would not have rolled away; or, if Humble had inspected the car to see that the brake was set or had set the brake, the injuries certainly would not have occurred. Comparing the negligence of Humble with that of Mrs. Love we are unable to say that either party is the "real guilty party" who should bear all the loss. 30 Tex.Jur., p. 779; Gattegno v. The Parisian, Tex.Com. App., 53 S.W.2d 1005.

This holding is without prejudice to the rights of the Humble or Mrs. Love to contribution under art. 2212, Vernon's Ann. Civ.St.

By separate brief Mrs. Love presents points other than those already disposed of, which we will now consider:

Conflict is asserted between the finding of the jury that Mrs. Love was negligent in failing to set the emergency brake on her car and the finding that she was not negligent in leaving her car on the driveway under the facts and circumstances then existing. The "facts and circumstances then existing" were that the station employee was busy when Mrs. Love drove in and she requested and obtained his permission to leave her car in the driveway while she went to buy groceries. We are unable to see any connection, and certainly no conflict, between these facts and

her failure to set the emergency brake on her car.

Since we have held that the station attendants were employees of Humble, it is unnecessary to consider whether the trial court erred in permitting Humble to file a trial amendment denying liability for acts of these persons.

Mrs. Love offered in evidence and the trial court excluded a statement attributed to Schneider, Humble's commission agent, made after and discussing the incident, "that if he had been there it would not have happened." It is contended that this was an admission against interest made by a representative of Humble.

If there was error in excluding this evidence, it was harmless. Humble has been convicted of negligence without this evidence.

The remaining points relate to the lack or insufficiency of the evidence to support the jury finding that Mrs. Love was guilty of negligence in failing to set the emergency brake and that such negligence was the proximate cause of the injuries to the Martins.

Mrs. Love testified that she did not set the emergency brake before she left the car. She had traded at this station for three years or longer and the slopes of the driveway were perceptible to the naked eye. Under these circumstances we hold that the injuries to the Martins were such as Mrs. Love might reasonably anticipate as the natural result of her admitted failure to apply the emergency brake on her car.

The trial court's judgment is reformed by eliminating therefrom the judgment in favor of Mrs. Love against Humble for the recovery of any sums which she might pay on the Martin judgments, without prejudice to the right of Humble or Mrs. Love to seek contribution under the provisions of art. 2212, V.A.C.S., and, as reformed, the judgment of the trial court is affirmed.

Reformed and affirmed.