# HUMBLE OIL & REFINING COMPANY ET AL V. GEORGE F. MARTIN ET AL.

No. A-2052. Decided June 15, 1949.
Rehearing overruled October 5, 1949.
(222 S. W., 2d Series, 995.)

*Hart, Brown & Sparks* and *J. H. Hart,* all of Austin, for Humble Oil & Refining Company, *Looney, Clark & Moorhead,* and *Everett L. Looney,* all of Austin, for Mrs. A. C. Love et vir, petitioners.

*John D. Cofer,* and *J. L. Garity,* of Austin, for respondents.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

Petitioners Humble Oil & Refining Company and Mrs. A. C. Love and husband complain here of the judgments of the trial court and the Court of Civil Appeals in which they were held in damages for personal injuries following a special issue verdict at the suit of respondent George F. Martin acting for himself and his two minor daughters. The injuries were inflicted on the three Martins about the noon hour on May 12, 1947, in the City of Austin, by an unoccupied automobile belonging to the petitioners Love, which, just prior to the accident, had been left by Mrs. Love at a filling station owned by petitioner Humble for servicing and thereafter, before any station employee had touched it, rolled by gravity off the premises into and obliquely across the abutting street, striking Mr. Martin and his children from behind as they were walking into the yard of their home, a short distance downhill from the station.

The trial court rendered judgment against petitioners Humble and Mrs. Love jointly and severally and gave the latter judgment over against Humble for whatever she might pay the respondents. The Court of Civil Appeals affirmed the judgment after reforming it to eliminate the judgment over in favor of Mrs. Love, without prejudice to the right of contribution by either defendant under Article 2212, Vernon's Ann. Civ. Stat., 216 S. W. (2d) 251. The petitioners here respectively complain of the judgment in favor of the Martins, and each seeks full indemnity (as distinguished from contribution) from the other.

■ The apparently principal contention of petitioner, Humble, is that it is liable neither to respondent Martin nor to petitioner Mrs. Love, since the station was in effect operated by an independent contractor, W. T. Schneider, and Humble is accordingly not responsible for his negligence nor that of W. V. Manis, who was the only station employee or representative present when the Love car was left and rolled away. In this conncetion, the jury convicted petitioner Humble of the following acts of negligence proximately causing the injuries in question: (a) Failure to inspect the Love car to see that the emergency brake was set or the gears engaged; (b) failure to set the emergency brake on the Love car; (c) leaving the Love car unattended on the driveway. The verdict also included findings that Mrs. Love "had delivered her car to the custody of the defendant Humble Oil & Refining Company, before her car started rolling from the position in which she had parked it"; that the accident was not unavoidable; and that no negligent act of either of petitioners was the sole proximate cause of the injuries in question. We think the Court of Civil Appeals properly held Humble responsible for the operation of the station, which ad-

mittedly it owned, as it did also the principal products there sold by Schneider under the so-called "Commission Agency Agreement" between him and Humble which was in evidence. The facts that neither Humble, Schneider nor the station employees considered Humble as an employer or master; that the employees were paid and directed by Schneider individually as their "boss", and that a provision of the agreement expressly repudiates any authority of Humble over the employees, are not conclusive against the master-servant relationship, since there is other evidence bearing on the right or power of Humble to control the details of the station work as regards Schneider himself and therefore as to employees which it was expressly contemplated that he would hire. The question is ordinarily one of fact, and where there are items of evidence indicating a master-servant relationship, contrary items such as those above mentioned cannot be given conclusive effect. Restatement of the Law, Agency, Sec. 220; Gulf Refining Company v. Brown, (C. C. A. 4th Cir.) 93 F. (2d) 870, 116 A. L. R. 449, see also for general discussion of subject, Annotation in 116 A. L. R. 459. Even if the contract between Humble and Schneider were the only evidence on the question, the instrument as a whole indicates a master-servant relationship quite as much as, if not more than, it suggests an arrangement between independent contractors. For example, paragraph 1 includes a provision requiring Schneider "to make reports *and perform other duties in connection with the operation of said station that may be required of him from time to time by Company.*" (Emphasis supplied). And while paragraph 2 purports to require Schneider to pay all operational expenses, the schedule of commissions forming part of the agreement does just the opposite in its paragraph (F), which gives Schneider a 75% "commission" on "the net public utility bills paid" by him and thus requires Humble to pay three-fourths of one of the most important operational expense items. Obviously the main object of the enterprise was the retail marketing of Humble's products with title remaining in Humble until delivery to the consumer. This was done under a strict system of financial control and supervision by Humble, with little or no business discretion reposed in Schneider except as to hiring, discharge, payment and supervision of a few station employees of a more or less laborer status. Humble furnished the all important station location and equipment, the advertising media, the products and a substantial part of the current operating costs. The hours of operation were controlled by Humble. The "Commission Agency Agreement", which evidently was Schneider's only title to occupancy of the premise, was terminable at the will of Humble. The so-called "rentals" were, at least in part, based on the amount of Hum-

ble's products sold, being, therefore, involved with the matter of Schneider's remuneration and not rentals in the usual sense. And, as above shown, the agreement required Schneider in effect to do anything Humble might tell him to do. All in all, aside from the stipulation regarding Schneider's assistants, there is essentially little difference between his situation and that of a mere store clerk who happens to be paid a commission instead of a salary. The business was Humble's business, just as the store clerk's business would be that of the store owner. Schneider was Humble's servant, and so accordingly were Schneider's assistants who were contemplated by the contract. Upon facts similar to those at bar but probably less indicative of a master-servant relationship, the latter has been held to exist by respectable authority, which seems to reflect the prevailing view in the nation. Gulf Refining Company v. Brown, supra, and cases cited therein. If the Brown case be said to conflict with the later decision of the 5th Circuit in Bartle v. Travellers Insurance Co., 171 F. (2d) 469, the facts of the latter are yet more persuasive of an independent contractor type of relationship than the instant case, so the decision is not contrary to our holding.

. The evidence above discussed serves to distinguish the instant case from The Texas Company v. Wheat, 140 Texas 468, 168 S. W. (2d) 632, upon which petitioner Humble principally relies. In that case the evidence differed greatly from that now before us. It clearly showed a "dealer" type of relationship in which the lessee in charge of the filling station purchased from his landlord, The Texas Company, and sold as his own, and was free to sell at his own price and on his own credit terms, the company products purchased, as well as the products of other oil companies. The contracts contained no provision requiring the lessee to perform any duty The Texas Company might see fit to impose on him, nor did the company pay any part of the lessee's operating expenses, nor control the working hours of the station. From the court's comments in distinguishing Texas Co. v. Freer, 151 S. W. (2d) 907 (Tex. Civ. App., writ dism., judgm. cor.), and Gulf Refining Co. v. Rogers, 57 S. W. (2d) 183 (Tex. Civ. App., writ dism.), the differences between the Wheat case and the instant case became still more evident. Much the same may be said of The Texas Company v. Grant, 143 Texas 145, 182 S. W. (2d) 996, decided on the strength of the Wheat case but involving very meagre evidence on the point in question and even less proof of a master-servant relationship than the Wheat case. American National Insurance Company v. Denke, 128 Texas 229, 95 S. W. (2d) 370, denied liability of the insurance company to third parties injured by an automobile

driven by a soliciting agent of the company in the course of calling on policyholders or "prospects" and owned by the agent's wife. While that case does illustrate that tight control by the alleged "master" over the primary sphere of the alleged "servant's" work does not of itself entail responsibility for his acts in a sphere which is not subject to control, we think the factual situation is essentially different from that before us which, as stated, resembles one of a clerk in a store owned and controlled by the alleged "master".

■ Petitioner Humble also earnestly contends in this court that, whatever its responsibility for the conduct of the station employees, there is yet no evidence to support the jury findings of negligence. Assuming, as is apparently the case, that the point was sufficiently presented in the Court of Civil Appeals, we nevertheless think it not well taken. The evidence conclusively establishes the following facts: The filling station is and has been for some years located on the nortwest corner of West Avenue and 12th street, facing southwardly onto 12th street, which runs downhill at an obviously sharp grade from east to west, so that the east part of the station premises is considerably higher than the west portion. 12th street at this point is a rather crowded thoroughfare, especially at times such as that at which the accident in suit occurred, and is more or less completely built up on both sides with small business houses for at least the length of a city block immediately westward and downhill from the station, including the combined residence and business house of respondent Martin, which lies diagonally across 12th street from the station and about a quarter of a block below it. In front or south of the main station house or office and between it and 12th street lie the gasoline pumps and appurtenant loading lanes, the pumps being in two groups about twenty feet apart and together forming an east-west line about twenty seven feet long more or less parallel to 12th street and separating the two loading lanes that lie parallel to the line of pumps, one on each side. Mrs. Love left her car headed west in the outside or southerly lane at a point about midway between the two pump groups, and from this spot it escaped shortly thereafter. A few feet to the southwestward of the westernmost pump is a broad westerly exit from (or entrance to) the station, opening south into 12th street, so that an automobile going by the route from the spot where Mrs. Love left her car to 12th street could simply proceed some ten or twelve feet forward bearing slightly to the left and enter 12th street at an angle. The whole filling station grounds, including the mentioned driveways and exit, are of relatively smooth cement or concrete surface but are not of uniform level

or grade. The loading lane from which the Love car escaped is nearer level than some other parts of the station area and definitely more so than the corresponding portion of 12th street but has a visible fall toward the west of about six inches per twenty-seven feet. Immediately westward of the westernmost pump the downgrade increases in degree, and at about this point there also begins a rather sharp slope southwestwardly toward and through the above mentioned exit into 12th street. That a car, if left unsecured and driverless where Mrs. Love left her car, might easily roll thence into 12th street and thereafter down the steep slope of the latter, was or should have been obvious to the station employees and Mrs. Love, as should also have been the further fact that such an occurrence would probably result in serious damage to persons or property. There is little doubt under the evidence that, when Mrs. Love left her car at the time and place in question, she did so for the purpose of its being serviced by Humble and with the latter's actual knowledge and consent.

It seems proper that the operator of a filling station should owe to that part of the public which might be affected—such as respondent Martin here—the duty of ordinary care to prevent cars left with it under such circumstances from rolling away and injuring persons or property. If there were any doubt about this in the ordinary case, there could hardly be any in a situation like the present, in which both the possibility of such an accident and the probability of serious results therefrom were obvious. If, to take an extreme example, the station employee, Manis, had been otherwise unoccupied and standing close by Mrs. Love's car in a position where he could readily and with safety to himself have stopped it but, after seeing it start, had yet made no effort to stop it, there could be little doubt that such conduct would constitute actionable negligence on Humble's part toward the public. Similarly, if Mrs. Love had been a stranger visiting the station for the first time and, with the previous knowledge of the station employees, had left her car unoccupied and unbraked beside the pumps, so that it later rolled away, it seems plain that Humble ought to be responsible for the consequences to innocent third persons. These examples illustrate the existence of the duty of the station operator to the public and also the corollary proposition that the operator is not free to omit precaution or effort simply because the particular car in question is brought onto the premises by its owner or happens to escape before the station operator has taken physical control of it. They do not, however, throw much light on the problem of the quantum of care or precaution necessary to meet the standard of reasonable prudence.

■ As to the latter question, undoubtedly the peculiar physical characteristics of the station, all of which must be taken as a matter of law to be well-known to Humble, have a legitimate bearing, and as a result, we think the amount of care should plainly be greater than, for example, in the case of a station located in a flat area and without sloping driveways. Should authority be needed to support such a conclusion, it has been held in Texas and elsewhere that, under the so-called rule of *res ipsa loquitur*, evidence that a defendant's car was parked by him in a heavily sloping street and thereafter rolled down without a driver, damaging the plaintiff's person or property, was sufficient to carry the case to the jury on the issue of the defendant's negligence, even though the only other evidence on the point was direct evidence by the defendant or others that the emergency brake was carefully set at the time the car was parked. Ketchum v. Gillespie, Tex. Civ. App., 145 S. W. (2d) 215; Glaser v. Schroeder, 269 Mass. 337, 168 N. E. 809. While we do not consider the present case one of *res ipsa loquitur* or other rule of circumstantial evidence in so far as the liability of petitioner Humble is concerned, the decisions mentioned do necessarily imply that the matter of leaving a car on a sloping way is one in which the ordinarily prudent man would be expected to take a greater amount of precaution than otherwise. Assuming that in the instant case the station employee, Manis, were unoccupied at the time Mrs. Love left her car in the pump area, knew she had herself taken no precautions to keep the car stationary and yet stood idly by in his office for even two or three minutes, we think there would be a serious question as to whether Humble would not be guilty of negligence as a matter of law. This, because his knowledge would, by all reasonable standards, call for quicker action than might otherwise be required. The only difference between such a situation and the instant case are, first, that in the latter Manis might conceivably have been justified in relying on Mrs. Love herself to take the necessary precautions; and, secondly, that Manis was evidently occupied with servicing another car at the pumps and other successive duties from the time Mrs. Love left her car until after it rolled away.

■ As to the first difference, while Mrs. Love was a regular customer of the station, understood the necessity of securing her car and was negligent in failing to secure it, we cannot say that, as a matter of law, Manis exercised sufficient care in the discharge of his duty to the public by simply assuming she had secured it. A plaintiff injured when standing close to a public street without keeping a lookout, is not, as a matter of law, to be acquitted of contributory negligence because he assumes that

the defendant's oncoming car will be driven with due care and will therefore not strike him. Cronk v. J. G. Pegues Motor Co., 167 S. W. (2d) 254 (Tex. Civ. App., writ ref. w. o. m.). And there is a distinction between the general axiom that a person is not bound to anticipate the negligence of others and the idea that one may always discharge a duty of due care to the public by relying on performance by another of the same duty owed by the latter. Mrs. Love did not indicate to Manis that she had secured or intended to secure the car, and we think any implied reliance by him upon her doing so was merely a circumstance to be considered by the jury on the issue of negligence.

■ Nor can we say, as a matter of law, that the circumstance of Manis being busy with other matters at the time shows him to have discharged his duty of due care. It was clearly not very difficult for him to have interrupted his other work for the brief time an inspection would require. The jury might well have thought it a more urgent matter to make this inspection than to collect for soft drinks purchased by customers, or do several other things he appears to have done before the car rolled away. Plainly any unfavorable consequences of interrupting these latter duties would be less serious than those of a failure to inspect an unguarded car. As to the matter of just how much time elapsed between the moment Mrs. Love left her car and the moment it rolled away, while the preponderance of the evidence does indicate that this period was rather short, we cannot say as a matter of law that it was only "two or three minutes" as testified to by Manis. His estimate was at best an estimate and, coming from him as an employee of the defendant Humble and one who might himself be responsible in the premises, need not be taken as conclusive, while at the same time there is at least some evidence from the various other witnesses indicating that a considerably greater period of time might have elapsed. In any event the period is itself not conclusive one way or the other. If with his knowledge that the car was left on the sloping lane, it was reasonable for Manis to forego an inspection for two or three minutes, it was doubtless reasonable for him to do so for a still longer time. On the other hand, we think the jury might properly have considered even two or three minutes too long a delay under the circumstances. The point was merely evidentiary and no more the proper subject of a special issue than, for example, the question of just what other duties Manis was in fact performing during the period.

Other contentions (by both petitioners) stem from an apparent confusion in the jury findings to the effect that, while Mrs. Love negligently failed to set the emergency brake (she

admitted failing to set it), she nevertheless did "properly place the gears of her car in reverse" (as she—and she alone—testified) when she left it. The jury also found upon sufficient evidence that the gears were not in defective condition. An apparently impartial witness testified rather convincingly that when he examined the car immediately after it stopped in respondent Martin's yard, the gear was in the neutral position. The evidence does not admit of any theory of the accident such as the meddling of a third party or the intervention of any force other than gravity. If the car were left in reverse gear, it seems clear that neither Humble nor Mrs. Love would be liable. It is common knowledge that such a procedure is quite as safe a method of securing a car as setting the emergency brake, and that cars in reverse gear do not roll on grades such as that prevailing at and even beyond the place where the Love car undoubtedly was left. Mrs. Love could not be held negligent if she took an obviously sufficient precaution, and if she did take it, the failure of Humble to inspect was not the proximate cause of the accident, nor was its failure to take other precautions negligence. The Court of Civil Appeals considered that, under the circumstances, the finding that the car was left in reverse was "almost incredible". Without the least reflection upon the good faith of Mrs. Love, we more than agree with this view and think this Court is not bound by the finding or Mrs. Love's statement, which is its only support; her testimony being in our judgment at variance with elemental physical facts and common knowledge and so not evidence, regardless of the good faith of the witness. Seiwell v. Hines, 273 Pa. 259, 116 A. 919, 21 A. L. R. 139; Austin v. Neiman, 148 S. W. (2d) 794 Tex. Com. App.), 20 Am. Jur., Evidence, Sec. 1183. This conclusion disposes of the only serious contention of petitioner Humble with respect to its negligence not being a proximate cause of the accident. It also eliminates the alleged conflicts in the verdict except that concerning the answer to Special Issue No. 17 to the effect that petitioner Mrs. Love was not negligent "in leaving her car on the driveway, under the facts and circumstances then existing." We agree with the Court of Civil Appeals that this latter finding is not in irreconcilable conflict with the finding that Mrs. Love was negligent in failing to set the emergency brake of her car. The former simply referred to the act of leaving the car on a slope.

■ As to the question of which, if either, of the two petitioners is entitled to judgment of indemnity against the other, we think that under the rule as laid down by this Court in Wheeler v. Glazer, 137 Texas 341, 153 S. W. (2d) 449 and more recently in Austin Road Company v. Pope, 147 Texas 430, 216 S. W. (2d)

563, petitioner Humble is entitled to prevail, and that the Court of Civil Appeals accordingly failed to do Humble complete justice in merely eliminating the trial court judgment over in favor of petitioner Mrs. Love. To paraphrase the words of Chief Justice Alexander in the first mentioned case, "Mrs. Love was a wrongdoer as to Humble, but Humble was not a wrongdoer as to Mrs. Love." That Humble by its failure to inspect and secure Mrs. Love's car breached a duty to that part of the public which might be affected and cannot excuse itself by saying it assumed Mrs. Love would herself use due care to make her car secure, does not mean that Humble breached a duty to *her* by not making an inspection and correcting the dangerous situation she herself had negligently created. On the other hand, disregarding as we do the finding that she placed her car in reverse gear, we think Mrs. Love, by thus leaving her car unsecured in a situation, which the evidence shows she knew to be dangerous, at a time when she knew the only available employee was busy with other duties and would probably not give it immediate attention, breached a duty to Humble as well as to the public. The finding that she "delivered" the car to Humble is a mere legal conclusion that adds nothing to the undisputed facts in evidence. Even if it meant that Manis expressly consented when she told him she was leaving the car, instead of receiving her statement in silence, it would still make no difference. There is no contention that she told Manis the car was unsecured or that he directly or indirectly told her she need not herself secure it or in any way mislead her in the matter. That a bailment for mutual benefit was created does not change the situation under these facts. Even though a bailee, Humble, as between it and Mrs. Love ,had the right to assume that she had "delivered" the car in a safe condition and, being thus misled into liability to the Martins, was the victim of wrong rather a wrongdoer.

The judgment of the Court of Civil Appeals is reversed as to that portion of it which merely eliminates the part of the trial court judgment granting recovery over against petitioner Humble Oil & Refining Company in favor of petitioner Mr. and Mrs. A. C. Love and adjudicates the rights between these defendants to be determinable on the basis of contribution under Art. 2212 Vernon's Annotated Civil Statutes, rather than on an indemnity basis. The judgment of the trial court is modified to allow the petitioner first named recovery against petitioner Mrs. A. C. Love by way of indemnity for such sums as it may pay and be required to pay to the plaintiffs, George F. Martin et al, or any of them under the judgment rendered against it in their favor and so as to allow said petitioner

Humble Oil & Refining Company, recovery against petitioner Mrs. Love for all court costs incurred by the former. In all other respects the judgments of the trial court and Court of Civil Appeals are affirmed.

Associate Justice Sharp, Chief Justice Hickman, and Associate Justice Taylor concur in part and dissent in part, Associate Justice Hart disqualified and not sitting.

Opinion delivered June 15, 1949.

MR. JUSTICE SHARP, joined by JUSTICE TAYLOR, dissenting.

I am in accord with the holding of liability of both Mrs. Love and Humble for the injuries sustained by respondents, but respectfully dissent from the holding that Humble be indemnified by Mrs. Love.

The facts are undisputed that Mrs. Love, who was a regular customer of Humble, left her car on this occasion with Humble to have it serviced. When Mrs. Love first drove up to the service station, Manis, one of the employees of Humble, was working on another car. Mrs. Love told Manis what she wanted done to her car, and then sat in her car for several minutes, when she said to Manis: "I want to get some groceries at the store; will it be all right to leave my car here and go get them?" Manis replied: "That is perfectly all right, leave it right where it is." Mrs. Love then killed the motor, put the car in reverse gear, and left the station to go to the grocery store. She did not set the hand brake. The gears and clutch of the Love car were shown to be in good condition. Some time after Mrs. Love left the station the car was seen to commence rolling slowly towards the street. At this time Manis was in the office, and he saw the car crossing the street.

The jury found that the car had been delivered into the custody of Humble prior to the time that it started rolling from the position in which Mrs. Love had left it. The jury also found Humble guilty of the following acts of negligence, which proximately caused the injuries complained of: (1) Failure to inspect the Love car to see that the brake was set or the gears engaged; (2) failure to set the brakes on the Love car; and (3) leaving the Love car unattended on its driveway. The jury also found that failure to warn Mrs. Love that the driveway where she parked her car was not level was negligence.

The jury found that the gears of Mrs. Love's car were not

defective, and that Mrs. Love did not fail to properly place the gears of her car in reverse to prevent it rolling. The jury found that Mrs. Love was guilty of negligence in failing to set the emergency brake on the car. They also found that Mrs. Love "in leaving her car on the driveway under the facts and circumstances then existing" was not negligence. None of the acts of negligence of either Humble or Mrs. Love was found by the jury to be the sole proximate cause of the injuries to the Martins.

Based upon these findings of the jury, the trial court entered judgment in favor of respondents against Humble and Mrs. Love, and in favor of Mrs. Love as indemnity against Humble, The Court of Civil Appeals reversed the judgment of the trial court, and remanded this cause to the trial court to be retried upon the issue of contribution between Humble and Mrs. Love, as provided for in Article 2212. Mrs. Love contends that the judgment of the trial court should be sustained, while Humble contends that the judgment of the trial court should be reversed, and that judgment be rendered in its favor as indemnity against Mrs. Love.

Certain fundamental rules are established authorizing a party under certain facts to be entitled to contribution or indemnity against the other party. Independently of any statute relating to contribution, the general rule, based upon consideration of public policy, is that there can be no contribution as between joint tort-feasors equally guilty. Oats v. Dublin Nat'l Bank, 127 Texas 2, 90 S. W. (2d) 824; Gattegno v. The Parisian (Tex. Com. App.), 53 S. W. (2d) 1005; Wheeler v. Glazer, 137 Texas 341, 153 S. W. (2d) 449; Austin Road Co. v. Pope, 147 Texas 430, 216 S. W. (2d) 563.

In Oats v. Dublin Nat'l Bank, supra, this Court said: "Aside from the statute, it is held in negligence cases that, where two persons are liable to another for tort, the active wrongdoer should indemnify the one whose wrong is only passive. City of San Antonio v. Smith, 94 Texas 266, 271, 59 S. W. 1109; East Texas Public Service Co. v. Johnson (Tex. Com. Appls.) 6 S. W. (2d) 344. In other cases the principal delinquent is often held responsible to the codelinquent when under the facts the parties are not equally culpable. 10 Tex. Jur. pp. 554, 555, sec. 15; 6 R. C. L. pp. 1057, 1058, sec. 18."

Article 2212 of the Revised Statutes is a departure from the general rule, and permits a tort-feasor, when the evidence justifies it, to enforce contribution.

The majority opinion of this Court reverses both the judgment of the trial court and that of the Court of Civil Appeals, and renders judgment that Humble recover against Mrs. Love, by way of indemnity, such sums as it may pay or be required to pay to the Martins. In support of this holding the cases of Wheeler v. Glazer and Austin Road Co. v. Pope, supra, are cited. In neither of those cases was it held that a negligent defendant was entitled to indemnity from a negligent codefendant. In the first case, Wheeler v. Glazer, we held that a negligent defendant in a tort action was not entitled to indemnity from a codefendant who was found by the jury not to have been negligent as to him. The question there decided, as I view it, is not at all analogous to the question under review. There one of the defendants exercised ordinary care to avoid a collision with the other defendant's truck, and was not, therefore, a wrongdoer as to him. In Wheeler v. Glazer this Court considered both the general rule and Article 2212 of the Statutes, and I quote the following from that opinion:

"In 10 Tex. Jur. 554 it is said: 'Thus, where the parties are shown not to have been equally guilty, the principal delinquent may be held responsible to a codelinquent for damage paid by reason of the offense in which both were concerned in different degrees as perpetrators.'"

The opinion further says: "Where the injury forming the basis for the judgment against the joint tort-feasor results from a violation of a duty which one of the tort-feasors owes to the other, the latter, at common law, is entitled to contributions or indemnity from the former." And in discussing Article 2212 it is also said: "Moreover, the statute (Article 2212) here relied on by Glazer was enacted to prevent inequities between joint tort-feasors. *It would not be within the spirit of this statute to allow a right of contribution in favor of a tort-feasor where the event which brought about the injury resulted from his violation of a duty which he owed to the other tort-feasor from whom contribution is sought.*" (Emphasis mine.)

In the other case cited by the majority, Austin Road Co. v. Pope, 147 Texas 430, 216 S. W. (2d) 563, one negligent defendant was denied indemnity against his negligent codefendant, but his right of contribution was affirmed. In that case one of the defendants was negligent in failing to maintain a watchman at a place where loaded trucks of the other defendant were backed through a narrow passageway on a street where construction work was being carried on, and the driver of a truck was negligent in failing to keep a proper lookout, in operating

his truck on the west lane of the west side of the street, and in failing to sound his horn as a warning. There each defendant committed independent acts of negligence of the same general nature as those committed by the defendants in the case before us. But we held that neither defendant was entitled to be indemnified by the other. To my mind, the facts of that case are stronger on the side of the party seeking indemnity than are those in the instant case on the side of Humble. In that opinion, in denying the right of indemnity, we said: "* * * *the rule does not apply where the joint tort-feasors are not in pari delicto as to each other, as where the injury resulted from a violation of the duty one owes the other.*" (Emphasis mine.)

In 42 C. J. S., p. 604, sec. 27, subsec. a, the rule is stated as follows: "As a general rule one compelled to pay damages for the negligent or tortious act of another is not entitled to indemnity from the latter where both parties are joint tort-feasors or in pari delicto." Many decisions from Texas and other jurisdictions are cited in the footnotes to sustain this rule.

Why Article 2212, relating to contribution, should be applied to facts of that case was summed up in the following language: "The act of neither was the sole proximate cause. Both tort-feasors were present on the scene, either in person or by representatives, and each participated in the wrong. Either one or both might have prevented the wrong. Neither did. Each owed the other the same due care, and each owed the duty to exercise ordinary care for the safety of the injured party. Both violated these duties. Consequently, each was guilty of the same quality of negligence toward the injured workman. Thus they stand in pari delicto with each other and must, under the statute, share equally the burdens arising from their wrongful conduct."

Humble having accepted the car for service, the possession of the car, under the facts, passed into the hands of Humble as a bailee. Therefore, Humble was primarily responsible for the car while the car was in its custody and possession, and its liability with respect to the car is that of a bailee. 5 Tex. Jur. Supp., p. 251, sec. 13, p. 252, sec. 14; Simms v. Sullivan, 100 Or. 487, 198 Pac. 240, 15 A. L. R. 678, and authorities cited therein. Humble having accepted the car as bailee, it became primarily liable to third persons for any injuries which might be caused by the car on account of Humble's negligence while in its custody and control, and the length of time the car remained in the hands of Humble before it caused the injuries complained of does not alter the duty of Humble as bailee to Mrs. Love.

Mrs. Love had ceased to exercise control of the car, and had gone to the grocery store, and she was not present at the time the car rolled out of the station. The jury found Humble guilty of negligence on several issues, while they found Mrs. Love guilty of negligence on only one issue; and when considered in connection with the other issues found in favor of Mrs. Love, that finding of negligence on her part became negligible as compared with the findings of negligence against Humble. Consequently, it cannot be said that she was equally guilty as a tort-feasor with Humble, or that she and Humble were in pari delicto as to each other at that time, with reference to the car.

The findings of negligence on the part of Humble by the jury also show a finding of a breach of duty owed by Humble to Mrs. Love, under the facts of this case, and such findings certainly would not justify a judgment of contribution, much less a judgment of indemnity, in favor of Humble over and against Mrs. Love. On the contrary, the jury having found that Humble had breached a duty it owed Mrs. Love, this justifies a judgment of indemnity in favor of Mrs. Love over and against Humble. Wheeler v. Glazer, supra; Austin Road Co. v. Pope, supra; 18 C. J. S., p. 16, sec. 11 b (1).

In 42 C. J. S., p. 596, sec. 21, relating to the rule authorizing a recovery of indemnity for another's wrong, the general rule is stated as follows: "One compelled to pay damages on account of the negligent or tortious act of another has a right of action against the latter for indemnity."

The findings of the jury unquestionably establish that Humble is primarily responsible for the negligence or wrongful act which caused the injuries, and if Mrs. Love is compelled to pay damages on account of the negligence of Humble, she has a right of action against Humble for indemnity. See 42 C. J. S., p. 600, sec. 23.

To permit Humble to recover against Mrs. Love, the findings of the jury would have to show that Mrs. Love was equally guilty with Humble, and that Humble was not guilty of breaching a duty it owed Mrs. Love with respect to the car. The findings of the jury show to the contrary, and this Court is not justified in disregarding the findings upon these issues. It follows, as was held by this Court in the two recent cases above cited, that the right of indemnity does not exist in favor of Humble against Mrs. Love, and it also follows from the findings of the jury that the right of indemnity does exist in favor of

Mrs. Love against Humble. The judgment of the Court of Civil Appeals should be reversed, and the judgment of the trial court should be affirmed.

Associate Justice Taylor joins in this opinion.

Chief Justice Hickman agrees with it in large part, but regards the question, as between the defendants, as one of contribution, as held by the Court of Civil Appeals.

Opinion delivered June 15, 1949.

Rehearing overruled October 5, 1949.