THE TEXAS COMPANY V. MRS. WILLIAM M. WHEAT ET VIR.

No. 7985. Decided January 27, 1943.
Rehearing overruled March 3, 1943.
(168 S. W., 2d Series, 632.)

*Wm. E. Loose* and *W. O. Crain,* both of Houston, *Eskridge & Groce,* of San Antonio, *Black, Graves & Stayton,* and *Charles L. Black,* all of Austin, for petitioner.

It was error for the Court of Civil Appeals to hold that there was evidence raising an issue of fact as to whether the station operator, Sam Gossen, was an agent or employee of the Texas Company and that the district court therefore erred in giving a peremptory instruction in favor of petitioner. King v. Golloway, 284 S. W. 942; Horan v. Richfield Oil Corp., 56 Ariz. 64, 105 Pac. (2d) 514; Burton-Lingo Co. v. Armstrong, 116 S. W. (2d) 791.

*William Aubrey, Carter & Lewis, H. C. Carter, Champe G. Carter,* and *Randolph L. Carter,* all of San Antonio, for respondents.

When a litigant requests the court to peremptorily instruct a verdict in his behalf he admits as true all the evidence supporting the contention of the adverse party, unless the evidence is conflicting, which fact of itself indicates the presence of a jury question. Overton Refining Co. v. Harmon, 130 Texas 365, 110 S. W. (2d) 555; Lawson v. Hutcherson, 138 S. W. (2d) 131; Kleising v. Miller, 83 S. W. (2d) 732.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

This suit was brought by Mrs. William M. Wheat and her husband against Sam Gossen and The Texas Company for damages for personal injuries sustained by Mrs. Wheat as the result of a fall in front of a service station in the City of San Antonio. At the conclusion of plaintiffs' evidence, plaintiffs took a nonsuit as to Gossen, and the court instructed a verdict in favor of The Texas Company. The Court of Civil Appeals reversed the judgment of the lower court and remanded the cause for a new trial. 159 S. W. (2d) 238.

The Texas Company leased the service station to Gossen. There was evidence that Gossen's employees negligently washed lubricating oil drained from an automobile on the premises across the sidewalk in front of the service station, and that Mrs. Wheat, who was walking on the sidewalk, slipped on the oil and fell and was injured. It was the contention of the plaintiffs that the relation of master and servant existed between The Texas Company and Gossen so as to make the company liable for the negligence of Gossen and his employees.

The contract between The Texas Company and Gossen was evidenced by written instruments, and the Court of Civil Appeals was of the opinion that these instruments, on their face, created the relation of landlord and tenant; but the court was also of the opinion that there were circumstances in evidence from which the jury could have drawn the inference that the real relation between the company and Gossen was that of master and servant. It was for this reason that the cause was remanded for new trial, and it was upon this holding that we granted a writ of error.

The testimony concerning the relation between the company and Gossen consisted entirely of written instruments and Gossen's testimony. The written instruments were the

"Lease Contract," "Letter Modifying Rental Clause," and a "Sales Contract." Essential portions of these instruments are copied in the opinion of the Court of Civil Appeals, and need not be here repeated. The Lease Contract leased the premises to Gossen primarily for use as a service station at a rental of $280.00 per month for a period of one year, and from year to year thereafter, subject to the right of termination by either party at the end of the year upon ten days' notice. Lessee was required to keep the premises in good repair and in a clean, safe, and healthful condition, and upon default in any of the covenants lessor could terminate the contract. By letter written at substantially the same time as the delivery of the Lease Contract, the rent was reduced to $100.00 per month, plus one cent per gallon on each gallon of gasoline delivered to the premises in excess of 10,000 gallons per month. This provision, however, was only temporary and could be cancelled at the will of the lessor. In the event of its cancellation of the original rental of $280.00 per month would apply. Simultaneously a Sales Contract was entered into by which Gossen agreed to buy from The Texas Company certain quantities of gasoline, oils, and greases each year—the prices, at seller's election at time of delivery, to be either the seller's posted service station price therefor, less seller's posted discount to dealers, or the seller's posted dealer's price therefor, as posted and displayed at seller's bulk plant from which the deliveries were to be made. While there was nothing in the contract to prohibit lessee from selling the products of other dealers at the station, he was not permitted to sell products purchased from others under the trade-mark or trade-name of the seller unless specifically so authorized by the seller. He was permitted to use the company's trade-marks and trade-names to identify and advertise products manufactured by the company and sold by him.

According to Gossen's testimony he purchased from a third party petroleum products and other personal property on the leased premises at a cost of $900.00, and after leasing the premises from The Texas Company, operated the station as his own. He had his name on the station; paid the light, water, and telephone bills and city license fees; employed, controlled, paid, and discharged his employees; fixed his own hours for opening and closing the station; purchased and paid cash for merchandise; handled batteries, tires, and other goods not sold by The Texas Company, and sold such merchandise, including commodities purchased from The Texas Company, for

cash or on credit, and at such prices as he saw fit; bore the losses and kept the profits; and finally sold the lease, with the consent of the lessor, together with the merchandise on hand, for $1,300.00, and appropriated the money to his own use. There was evidence that the representatives of The Texas Company frequently conducted schools or gave lectures for operators of service stations, and that he was notified when and where these meetings were to be held. He was invited to attend these meetings, but was not required to do so. He usually attnded the meetings. He thought it was to his interest to do so because it improved his ability to make sales. At these meetings he was taught how to approach a customer, what kind of service to render, how to render it in the most efficient manner in the shortest time, how to lubricate cars, and how to keep the station and rest rooms clean. He attended these meetings and obtained a "Diploma." It was his understanding that the instructions given at these schools were mere suggestions, which he could follow if he liked, but was not required to do so. Other wholesale companies that supplied him with tires and batteries for sale at the station conducted similar schools, which he attended. From time to time representatives of The Texas Company would come by the station and instruct him how to keep the station clean and how to service cars. He interpreted these instructions as mere suggestions. He appreciated the instructions because they helped him increase his sales. He followed the suggestions if he thought they were helpful—otherwise he did not. The Texas Company carried on a national advertising campaign, by which it assured motorists that rest rooms at which the sign "Texaco Registered Rest Room" was displayed were clean. Such service was available to independent dealers. In order to have the right to display such signs operators were required to maintain certain minimum standards of cleanliness. The company supplied Gossen with one of these signs. He considered it worth something to a service station operator to have the sign displayed in front of his station because it helped to increase his sales. He understood that he was required to keep the rest room clean—otherwise the company would remove the sign and deprive him of the advertisement. Occasionally an inspection from the company would come by and inspect the rest room, and if it was not clean he would suggest that it be cleaned up. He and his employees had the privilege of wearing The Texas Company uniforms, but were not required to do so. He considered it good advertisement to use the uniforms. He was allowed to sell gaso-

line on The Texas Company credit cards, but was not required to do so. He did so because he could always get his money from The Texas Company. The company furnished him with stationery for recording and reporting such sales. The company furnished him with signs showing that Texaco products were sold at the station, and he used them because he thereby obtained the benefit of the national advertising of the company. Although the contract required Gossen to keep the station in repair, the company repaired it on one occasion and painted it on another.

The above facts involve all of the circumstances suported by the evidence, which have been pointed out by the plaintiffs as tending to show that the relation of master and servant existed between The Texas Company and Gossen.

■ Whether or not the relation of master and servant existed between The Texas Company and Gossen so as to make the doctrine of respondent superior applicable, depends on whether The Texas Company had the right to control Gossen in the details of the work to be performed in the operation of the service station. Carter Publications, Inc. v. Davis, 68 S. W. (2d) 640, 641 (writ refused); Lone Star Gas Co. v. Kelly (Com. App.), 46 S. W. (2d) 656.

■ The contract between the company and Gossen on its face, as evidenced by the written instruments, created the relation of landlord and tenant, and not the relation of master and servant, and we find nothing in the evidence to indicate that the contract, as written, was intended as a subterfuge or sham to conceal the existence of a different relationship. The fact that Gossen paid rent, bought and paid for the merchandise, bore all the expenses of operating the station, employed and controlled the employees in the discharge of their work, stood the losses and appropriated the profits is consistent with the relationship of landlord and tenant, and inconsistent with that of master and servant.

Neither do we find anything in the evidence to justify an inference that after the contract had been entered into it was abandoned, and that the company assumed charge of and actually controlled the details of the operation of the station. It is true that the company demanded that certain standards as to cleanliness be maintained in the operation of the station,

and that by reason of the option to cancel the provision for reduced rent it was within the company's power to enforce obedience to its commands. But the company, as lessor, was interested in maintaining the good reputation of the station, and it had a right, as a condition precedent to the leasing of the station, to demand maintenance of such standards. It could enforce compliance with the contract in the maintenance of these standards without creating the relation of master and servant so long as it did not undertake to direct the details by which the results were to be accomplished. Cox Dry Goods Co. v. Kellogg (Civ. App.), 145 S. W. (2d) 675; Dave Lehr, Inc. v. Brown, 127 Texas 236, 91 S. W. (2d) 693; Lone Star Gas Co. v. Kelly (Com. App.), 46 S. W. (2d) 656, syl. 4; Carter Publications, Inc. v. Davis, supra. Consequently, the fact that the company demanded that the station, including the rest room, be kept clean did not create the relationship of master and servant.

The company was interested in having prompt and efficient service rendered by operators at stations where products manufactured by it were offered for sale. Consequently, it conducted voluntary schools for such operators, and from time to time gave helpful suggestions at the stations. These instructions or suggestions were of mutual benefit, for they enlarged the operator's sales and increased the consumption of the products manufactured by the company. The instructions so given by the company's representatives as to how to service cars were understood by both parties to be mere suggestions, which Gossen could accept or reject as he liked. The company by giving such instructions did not undertake to authoritatively direct how the work was to be done.

■  The injury in this case was caused through the negligence of Gossen's employees in flushing oil over the sidewalk while cleaning the floor of the service station. We think it clear from the evidence that the company did not have the right nor did it undertake to exercise the right to control Gossen and his employees in the details to be followed by them in keeping the service station clean. They were free to perform such work as they saw fit. They were therefore not acting as the employees of the company in cleaning the service station—the act out of which this injury grew—and consequently the company is not liable for the negligence of such employees. American National Ins. Co. v. Denke, 128 Texas 229, 95 S. W. (2d) 370, 107 A. L. R. 409.

In the case of Gulf Refining Co. v. Rogers, 57 S. W.. (2d) 183, relied on by plaintiffs, there was evidence that the contract between the company and the operator of the service station was a subterfuge, and that the company not only reserved the right to control the details by which the station was to be operated, but actually assumed and exercised such control not only as to the manner in which the work was to be performed, but as to who should be employed to do the work. That case is clearly distinguishable from the case at bar.

In the case of The Texas Company v. Freer, 151 S. W. (2d) 907, relied on by the plaintiffs, the station was operated under The Texas Company's name. The operators did not have their name on the station. The operators testified that they operated the station "on a commission" and "got so much money according to the amount of gas sold." The company's representative gave instructions to the operators as to the keeping of the station clean and the price to be charged for gasoline and other products. The operators were not permitted to sell any products except those supplied by the company, and they could not change the price of the products without the company's consent. No such facts are presented in the case before us.

Under the facts of this case we are of the opinion that the trial court properly instructed a verdict for defendant.

The judgment of the Court of Civil Appeals is reversed, and that of the trial court is affirmed.

Opinion delivered January 27, 1943.

Rehearing overruled March 3, 1943.