**Dick R. McMAHAN et al., Appellants,**

v.

**Kathleen HERRING, Appellee.**

No. 5460.

Court of Civil Appeals of Texas.

El Paso.

July 19, 1961.

Rehearing Denied Aug. 23, 1961.

**680**

in Hill County, where they resided, rather than in Dallas County, where the suit was instituted.

Kathleen Herring filed suit for personal injuries and damages resulting from a collision between a truck being driven by Dick R. McMahan, son of W. T. McMahan, and an automobile in which Kathleen Herring was a passenger. The collision occurred in Hill County, where plaintiff was also a resident. Plaintiff alleged that "Dick R. McMahan alone, or jointly with W. T. McMahan, was at such time the duly authorized agent and consignee of Magnolia Petroleum Company", which company had its principal office and place of business in the City of Dallas, Dallas County, Texas, and which company was also made a party defendant.

Defendant Magnolia Petroleum Company filed an answer which, in part, denied that at the time and on the occasion in question, Dick R. McMahan and W. T. McMahan were its "agents, servants or employees," and set out that W. T. McMahan was an independent contractor. The McMahans urged in their plea of privilege that as to them, no exception to exclusive venue in the county of one's residence existed in the cause, which contention was overruled and this appeal taken.

At the hearing on the plea of privilege, which was heard before the court without a jury, appellee relied upon the provisions of subdivision 4 of the general venue statute, Article 1995, Vernon's Ann.Revised Civil Statutes, which reads: "If two or more defendants reside in different counties, suit may be brought in any county where one of the defendants resides. * * *"

█ In invoking the provisions of subdivision 4 of Article 1995, appellee, in order to maintain her suit in Dallas County against the non-resident appellants, must sustain, by a preponderance of the evidence at the venue hearing, a cause of action against Magnolia Petroleum Company, the resident defendant.

Strasburger, Price, Kelton, Miller & Martin, Royal H. Brin, Jr., Dallas, for appellants.

Jack Sims, Hillsboro, for appellee.

CLAYTON, Justice.

This is an appeal from an order overruling a plea of privilege filed by Dick R. McMahan and W. T. McMahan, two of the defendants in the court below, to be sued

43–B Tex.Jur. 435 (and cases therein cited). The cause of action against Magnolia Petroleum Company would, of necessity, have to be based upon a showing that W. T. McMahan, who employed Dick R. McMahan, was himself an employee or servant of Magnolia Petroleum Company, and not an independent contractor.

The undisputed facts elicited at the hearing on plea of privilege showed that W. T. McMahan was engaged in the sale and distribution on consignment and for a specified commission, in a somewhat limited territory, of the products of the Magnolia Petroleum Company, and, in furtherance of such occupation, employed his son, Dick R. McMahan. In the discharge of his duties, Dick R. McMahan was driving a truck belonging to his father when the collision occurred, resulting in the alleged injuries and damage to appellee.

While it seems clear from the record that Dick R. McMahan was the servant or employee of W. T. McMahan, the determination of the character of relationship existing between W. T. McMahan and Magnolia Petroleum Company presents certain difficulties. A printed instrument executed by or on behalf of these latter two parties, and entitled "Consignment Contract", was introduced in evidence at the venue hearing, and was shown to be the written agreement between the parties on the date of the collision. This instrument provides, in part, as follows:

"1. No right is reserved by Consignor to supervise, direct or control the manner or details of the work to be done by Consignee or his agents or employees under this consignment contract. Consignee is engaged in his own personal, separate business as a factor and a commission merchant, as those terms and relationships are technically and legally defined, and all provisions of this contract, all operations hereunder and all dealings with third persons shall be strictly and fully governed thereby * * *"

"3. The Consignee assumes all liability for loss and damage of whatever character sustained by the Consignor or third persons, resulting from the acts of Consignee or his employees and servants. Any and all employees or servants employed by Consignee are exclusively servants and employees of Consignee * * *"

■ The quoted language, taken alone, would strongly indicate that W. T. McMahan, as "Consignee", was an independent contractor in his dealings with Magnolia Petroleum Company, as "Consignor". Such provisions, however, cannot be taken alone, but must be viewed along with all other evidence bearing on the relationship of the parties, contractual and otherwise. Humble Oil & Refining Co. et al. v. Martin et al., 148 Tex. 175, 222 S.W.2d 995. An examination of the Consignment Contract and the evidence adduced at the venue hearing reveals the following controls established by Magnolia over the conduct of the business of McMahan:

The products of Magnolia could be sold by McMahan only in a certain designated territory, which was subject to change by Magnolia on 30 days' notice; title to such products remained in Magnolia until they had been sold by McMahan in accordance with the agreement, and could only be sold at prices not less than the prices authorized by Magnolia—and then only for cash—unless credit was authorized by Magnolia. McMahan could not cash personal checks for customers or others out of funds of Magnolia, nor could he accept personal checks for cash sales from persons restricted by Magnolia to cash, or who did not have satisfactory credit ratings; and while McMahan could not retain any monies due him from Magnolia, the latter could withhold any commissions, etc., in its possession belonging to or due McMahan "for the purpose of reimbursing itself" for any indebtedness due Magnolia by McMahan at any time. Strict reports, audits and accountability for all monies received

for, and property belonging to Magnolia, were required; billing to customers and reports to Magnolia were to be made on forms and stationery furnished by the company and bearing its name; Magnolia was given the option to purchase buildings and equipment acquired or used by Mc-Mahan in his assigned territory (subsequent to the effective date of the Contract), at a price equaling the original cost of the said buildings and equipment less depreciation as fixed in the Contract; upon the termination of the Contract (which could be terminated by either party at any time), McMahan's commissions would cease, and he would immediately give up possession of any premises occupied by him and surrender to Magnolia anything of value belonging to it that might be in McMahan's possession, but Magnolia would have the right, for a period of not to exceed three months from termination, and at a stated rental, to use McMahan's petroleum products equipment and facilities, replenish the products therein and sell and deliver such products therefrom, whereas McMahan would be bound "not to engage in a competing business within a radius of ten (10) miles of any of the points designated herein for a period of five years after such termination." The warehouse and storage tanks used in the operation of McMahan's business were owned by Magnolia, and Magnolia provided in the Consignment Contract the following:

"2. It is expressly understood and agreed that commissions paid hereunder cover full compensation to Consignee for the proper handling of the business in the territory assigned to the Consignee, including the proper care of all stocks, materials and properties placed in his charge, or coming into his possession, returning iron barrels to service without cost to Consignor, soliciting and carrying on business, making deliveries, collecting accounts, making reports, unloading cars and such other services as may be necessary for the proper conduct of the business."

That Magnolia was, for all practical purposes, the sole judge of what "other services" might be required as necessary for the proper conduct of the business can be fully realized when the Contract goes on to provide that "the commission rates are subject to change on thirty (30) days' notice to the Consignee by the Consignor," and that the Contract as a whole could be terminated by Magnolia at any time.

In Maryland Casualty Co. v. Kent, Tex. Civ.App., 271 S.W. 929, 933, (affirmed by Tex.Com.App., 3 S.W.2d 414), the Court, in passing upon a quite similar situation, has this to say:

"From the foregoing authorities, it would seem that the supreme and surest test for determining whether one was an independent contractor or an employé or servant of another would be to ascertain whether the person employed was to do a specified piece of work or perform a specified service, and whether in doing so he was to adopt his own means and method of performing the service and whether in performing the service he was not to be under the control of the employer as to details, but only as to the final result of the work undertaken. If a person contracts to do a specified job or piece of work for another and has the right under the contract to adopt his own means and methods of accomplishing the work and is not to be controlled as to details by the employer, but is wholly independent of him except as to final results, then such a person is, in our opinion, in contemplation of law, an independent contractor, and not a servant or employé as those terms are used and understood in our Compensation Law. If, on the other hand, a person enters into a contract to perform any character of service for another, and in carrying out

the contract is to be controlled in material respects as to the manner and method or means to be adopted in carrying out the contract, then such person is, in our opinion, an employé, as that term is used in our Employers' Liability Act * * *."

■ We are of the opinion that the terms of the Consignment Contract in the instant case, taken together with the testimony presented at the venue hearing therein, show such controls by Magnolia over the conduct of McMahan's business, in material respects, as to constitute an employer-employee, or master-servant, relationship between the parties under the authority of the Kent case. If this is so, then appellee has established a cause of action against Magnolia under the doctrine of respondeat superior, and subdivision 4 of the Revised Statutes, Article 1995, would apply herein. True, the Kent case was a Workmen's Compensation case, but no reason is seen why the conclusions therein expressed cannot equally well be applied to the case at hand, and we feel that such conclusions reflect the prevailing law in Texas on the subject.

■ However that may be, the plea of privilege in the instant case was heard by the court without a jury. The order of the court overruling the plea of privilege is the basis of this appeal. The character of the relationship between the parties was a question of fact, which, in this case, was for the court to determine. Farmers' Gin Co-Op. Ass'n v. Mitchell, Tex.Civ.App., 233 S.W.2d 948. In doing so, the court had before it all the evidence presented, including the Consignment Contract, and was the exclusive judge of the credibility of the witnesses who testified and the weight to be given their testimony. In the absence of any showing that the court acted arbitrarily in denying the plea of privilege, his finding should be sustained.

The judgment of the trial court is affirmed.