397 P.2d 723

Clinton W. SHAVER, Sr., Plaintiff-
Appellant,

v.

Ray BELL, d/b/a Ray Bell Oil Company,
and Cosden Petroleum Corporation, a cor-
poration, Defendants-Appellees.

No. 750!.

Supreme Court of New Mexico.

Dec. 21, 1964.

M. Rosenberg, Dick A. Blenden, Harold N. Olive, Carlsbad, for appellant.

Atwood & Malone, Charles F. Malone, Roswell, for appellee Ray D. Bell.

McCormick, Lusk, Paine & Feezer, Carlsbad, for Cosden Petroleum Corp.

MOISE, Justice.

Plaintiff-appellant brought suit against defendant-appellees, Ray Bell, hereinafter referred to as "Bell"; Cosden Petroleum Corporation, hereinafter referred to as "Cosden" and Olin G. Bass, hereinafter referred to as "Bass," to recover for injuries suffered when plaintiff slipped and fell while in a gasoline filling station purchasing gasoline for his automobile. Bass was dismissed from the case on motion of plaintiff. Thereafter summary judgment in favor of Cosden and Bell was entered. This appeal followed.

The depositions and affidavits on file in the case disclose that appellee Bell leased the premises on which the service station is located from the Tracy Estate in 1959. He borrowed $8500.00 from appellee Cosden to build the station which sum was repayable at the rate of $164.33 per month. A written lease on the station was entered into whereby Bell leased to Cosden and by oral arrangement the station was then leased back to Bell. So far as can be determined from the proof presented, Cosden placed no restraints on Bell as sub-lessee and had no control of any sort over his use of the premises.

Bell, in turn, placed Olin G. Bass and Bill Hendrix in possession of the property to operate the station. The arrangement with Hendrix and Bass provided that Bell would provide certain specified equipment and, in addition, that he would furnish all trading stamps and advertising and pay all utilities. Hendrix and Bass agreed to purchase

all products sold by Bell so long as prices were competitive, paying Bell and accounting daily for all products sold. It was provided that the station should be open for business from 6:00 a. m. to 9:00 p. m., seven days each week. Bell and Bass had the right to terminate their relationship on 24 hours notice.

Plaintiff presents three points relied on for reversal. Broadly stated, they raise the question of the propriety of summary judgment in behalf of each remaining defendant because of the claimed presence of issues of fact concerning the relationship of the defendants, one to the other, and to Bass who is no longer a party. Also, they assert defendants are liable under the doctrine of Respondeat Superior.

The answer briefs of both defendants assert an absence of material issues of fact and, in addition, argue that the undisputed facts in the record will not support a recovery by plaintiff from either of them. We first consider whether under the facts a recovery for injuries suffered as a result of the plaintiff's slipping and falling can be supported by our decisions. If a negative answer is reached as to both defendants, the other issues need not be considered.

The rules applicable in summary judgment proceedings have been discussed so often by us that their repetition would contribute nothing. We are satisfied merely to direct attention to Hewitt-Robins, Inc., Robins Conveyors Division v. Lea County Sand & Gravel, Inc., 70 N.M. 144, 371 P. 2d 795; Coca v. Arceo, 71 N.M. 186, 376 P.2d 970, where the rules are discussed at some length, and numerous other cases cited therein.

Plaintiff testified in his deposition that he drove into the service station about 5:30 p. m. on April 20, 1962. He testified that it was dusk, but that the station was well-lighted. Upon plaintiff's request that the gas tank be filled, the attendant inserted a hose which had an "automatic service" attachment. Plaintiff then got out of his car and started back to tell the attendant to be sure the tank was full. When he got to a point even with the left rear fender of his car, he slipped and fell in what he claims was a puddle of oil. Plaintiff testified that he did not see the puddle before falling in it, but that upon later inspection it was found to be from twelve to eighteen inches long and from twenty-four to thirty inches wide. It was brownish in color—the color of oil. He stated that the attendant immediately after the fall said, "I have been threatening to clean that up. I guess I will clean it up now."

During the last several years we have been called upon to review a number of slip and fall cases. Of these, Carter v. Davis, 74 N.M. 443, 394 P.2d 594; Crenshaw v. Firestone Tire & Rubber Co., 72 N.M. 84, 380 P.2d 828, and Hallett v. Furr's, Inc., 71 N.M. 377, 378 P.2d 613, all involved slipping

and falling on ice or snow, and in all of them summary judgments for defendant were affirmed on the theory that "the store owner has no greater duty to prevent injury than the invitee has to protect himself or herself, since the dangers involved are universally known and are equally apparent to each party." Hallett v. Furr's, Inc., supra. The spot of oil in this case was not "universally known" and plaintiff stated that he did not see, or know of the existence of, the puddle of oil prior to stepping in it. Neither can we say as a matter of law that he saw or should have seen it.

Jimenez v. Shop Rite Foods, Inc., 72 N.M. 184, 382 P.2d 181, and Lewis v. Barber's Super Markets, Inc., 72 N.M. 402, 384 P.2d 470, are cases where plaintiffs fell in the produce department of a grocery store. In both of them judgments for defendants were upheld on the ground that reasonable minds could not differ that the facts did not establish negligence of the defendant as a proximate cause of the injury. Barrans v. Hogan, 62 N.M. 79, 304 P.2d 880, 61 A.L.R.2d 1, is an earlier case to the same effect.

Barakos v. Sponduris, 64 N.M. 125, 325 P.2d 712, and Mahoney v. J. C. Penney Co., 71 N.M. 244, 377 P.2d 663, on the other hand, are cases upholding judgments in favor of persons who had been injured when they slipped and fell on defendant's premises. In Lewis v. Barber's Super Mar-

kets, supra, we distinguished the two lines of cases in the following manner:

"The distinction we note between the two lines of cases referred to above is simply that in one the proof established as a fact or permitted a reasonable inference that the 'messy condition * * was a continuing occurrence—in effect a pattern of conduct * * *' whereas, in the other, no such proof was present or inference permissible. Plaintiff asserts with conviction that she has established a continuing 'messy condition' which clearly gives substantial support to the jury's verdict."

This is in addition to any question of contributory negligence or assumption of risk which might have been present in any of the cases.

Whereas in Lewis, supra, we concluded that there was no showing sufficient to establish liability of defendant, under the facts here it seems equally apparent that an issue is present concerning the condition which existed with reference to the oil on the pavement, and the knowledge of its presence and failure to do anything about it. Having arrived at this conclusion, we must consider who may be responsible for the injury.

The proof before the court showed that Bell was an independent distributor who purchased his gasoline and petroleum products from Cosden. Only Cosden gasoline

was sold at the station. A seventy-two inch pedestal sign with the word "Cosden" was located on the premises. Another sign on the building said "Cosray Oil Company," being a name used by Bell in one of his businesses.

The depositions and affidavits disclose the following additional facts concerning Cosden's position. Their products were sold exclusively on the premises. Their credit card facilities were available with the understanding that they stood any loss thereon. Cosden asserted no rights in connection with the station except that in the event of default in rental payments, Cosden could retake possession. They never had any direct contact with either Bass or Hendrix. Plaintiff's assertion that there is a conflict between the lease and the answers to interrogatories so as to raise an issue of fact is noted. We find no merit therein.

It is, of course, Cosden's position that it had no right to control its sub-lessee, Bell, in any manner whatsoever and that Cosden was not negligent because it had nothing to do with operation of the station and, further, that plaintiff was contributorily negligent. Bell also asserts a lack of control and an absence of negligence on his part, as well as the contributory negligence of the plaintiff.

Cases which have been found on the subject of control by an oil company over the operation of service stations generally involve agreements between the oil company and the operator directly. Under our facts, Bell is an intermediate party. We must, therefore, analyze the relationship, if any, existing between Cosden and Bell, Cosden and Bass, and between Bell and Bass.

Whether a station operator is an employee of an oil company or an independent contractor depends on the facts of each case, the principal consideration being the control, or right to control, of the operation of the station. Where the employee is subject only to the control or direction of the employer as to the result to be procured, he is an independent contractor; if he is subject to the control of the employer as to the means to be used in reaching that result, he is an employee. See Latta v. Harvey, 67 N.M. 72, 352 P.2d 649; Campbell v. Smith, 68 N.M. 373, 362 P.2d 523; and Shipman v. Macco Corporation, 74 N.M. 174, 392 P.2d 9, where we last discussed this problem. Miller v. Sinclair Refining Co., 268 F.2d 114 (5th Cir.1959) discusses the relationship of an oil company to an owner-operator of a filling station under a sub-lease from the company.

The plaintiff agrees that the question involved is basically one of control. He relies heavily on the case of Humble Oil and Refining Company v. Martin, 148 Tex. 175, 222 S.W.2d 995, wherein it was held under the "commission agency" agreement there being considered an issue of fact concern-

ing the relationship of the oil company and the operator was present. He asserts that in some aspects the facts of that case were more indicative of independence of the operator than are those here involved. In addition, he points to McMahan v. Herring (Tex.Civ.App.1961) 348 S.W.2d 679; Magnolia Petroleum Co. v. Pierce, 132 Okl. 167, 269 P. 1076, 61 A.L.R. 218; Donovan v. Standard Oil Co. of Louisiana (La.1940) 197 So. 320; Continental Oil Corporation v. Elias (Okl.1956) 307 P.2d 849; Barker v. General Petroleum Corporation, 72 Ariz. 187, 232 P.2d 390, modified on rehearing, 72 Ariz. 238, 233 P.2d 449; Farmers' Gin Co-op Association v. Mitchell (Tex.Civ. App.1950) 233 S.W.2d 948.

We would call attention to Texas Company v. Freer (Tex.Civ.App.1941) 151 S.W. 2d 907, and Texas Company v. Wheat, 140 Tex. 468, 168 S.W.2d 632, which serve to emphasize that even in the same jurisdiction slight changes in facts may result in different conclusions as to the presence of an issue for determination by the jury. A great number of cases dealing with this subject are annotated in 116 A.L.R. 457, 472, 475 and 83 A.L.R.2d 1282, 1292, 1296. A study of these cases will reveal that, although each case may be used to point out the view courts have taken on specific indicia of control, every case must ultimately be decided on its unique facts. Restatement (Second), Agency, § 220 (1958) sets forth the definition of a "servant" and discusses generally the matters of fact which, among others, should be considered in determining whether one acting for another is a servant or independent contractor.

We have hereinbefore set forth the facts disclosed by the record concerning Cosden's relationship to Bell. Viewing the evidence in a light most favorable to plaintiff, it was not shown that Cosden had any direct interest in the premises. Cosden did not, at any time, send its personnel to check the premises, nor did it deal directly with the operator of the station on sales of its products to him. Under the original lease from Bell to Cosden, Cosden had the right to assign the lease or sublet the premises but there is no indication that Cosden, when it orally sublet the premises to Bell retained any control over the premises or the operation of the station.

We see no control, or right to control, in the display of Cosden's trade mark and signs. Many courts have held that it is common knowledge that distinctive colors and trade mark signs are displayed at filling stations by independent dealers of gasoline. See Sherman v. Texas Co. 340 Mass. 606, 165 N.E.2d 916 (1960); Coe v. Esau and Continental Co., 377 P.2d 815 (Okl.1963); and Reynolds v. Skelly Oil Co., 227 Iowa 163, 287 N.W. 823. Plaintiff, therefore, could not assume from the appearance of the station, which has standard Cosden signs and colors, that the station was operated by Cosden.

■ Neither is the use of an oil company's credit card facilities by an operator an indication that the oil company operates the station. The court, in Coe v. Esau, supra, said:

"Neither can we view the dealer's practice of honoring the producer's credit cards as indicative of a master and servant relationship. The use of such cards constitutes a distinct business advantage to the station operator who is accorded full credit for all purchases made by the card holders." 377 P.2d at 818.

See also, Cities Service Oil Co. v. Kindt, 200 Okl. 64, 190 P.2d 1007, and Arkansas Fuel Oil Co. v. Scaletta, 200 Ark. 645, 140 S.W.2d 684.

Nor can it be said that the lease agreement between Cosden and Bell affected Bass, the operator. At least one court has stated that where there is a lease to an oil company as security for a loan from the oil company, and that oil company immediately re-leases or sub-leases the premises to the owner, the oil company is at most in the position of a lessee which had surrendered possession of the premises to its sub-lessee. Miller v. Sinclair Refining Co., supra. The court went on to hold that the oil company was not the employer of the operator.

"Appellant's [plaintiff's] final contention is that [the operator] operated the station as appellee's [oil company's] agent or employee and his negligence may therefore be attributed to appellee. * * * The answer would appear to depend on the facts of each case, and the main fact to be considered would be the right of control as to the mode of doing the work contracted for. * * * In this case it is clear that the oil company did not control the dealer's methods of operation. It did not control the hiring or firing of employees; did not set the retail prices for gas sold at the station; did not set the hours for opening and closing the station; required no reports on operations from [the operator]; and could not force [the operator] to comply with any of its suggestions except to the extent that it had the power to cancel the contract at the end of any year. [The operator's] independent status is further emphasized by the fact that he purchased his gas from Sinclair for cash, handled automobile tires and other merchandise other than Sinclair's, was free to and did engage in other lines of business, supplied his own building and equipment except for the tanks and pumps, and stood to retain all of the profits and suffer all of the losses from the operation of the station. * * * We conclude that [the operator] was not [the company's] employee."

■ Cosden did less to control the operation of the station than did Sinclair in

the cited case. Plaintiff suggests that the dealings were intended as a subterfuge to cover up the real agreement of the parties. We see nothing in the record which would give support to such a position. See Texas Company v. Wheat, supra, where a similar contention was advanced. Under the rules applicable in considering motions seeking summary judgment, hereinbefore noted, we find a total absence of fact or inference which would support a conclusion that Cosden exercised any control over the operation of the station or that the sub-lessee Bell, or the operator Bass, was its employee. We conclude that the action of the trial court in granting Cosden's motion for summary judgment was proper and should be affirmed.

■ Although plaintiff makes no specific point on the issue, he suggests in his brief that the case might be governed by defendants' relationship under their lease agreements as landlords. Most cases which are cited in this opinion mention the relationship of landlord and tenant, but find that no liability attaches by virtue thereof. Tenancy alone is insufficient to render a landlord liable for his tenant's torts. Texas Co. v. Wheat, supra, and Coe v. Esau, supra. See also Lommori v. Milner Hotels, 63 N.M. 342, 319 P.2d 949. There is nothing in the particular facts of this case which has been brought to our attention which would support a finding of liability either of Cosden as landlord of Bell, or of Cosden or Bell as landlord of Hendrix and Bass.

We turn to the question of whether an issue of fact was present as to the relationship of Bell to Hendrix or Bass. We have above set forth the most salient facts disclosed by the record in this regard. In addition to those facts previously noted we would mention that no rent was paid to Bell by Bass or Hendrix. Bell's return on the lease was limited to his profits on the sales to the station. It appears that Bell employed a "Station Supervisor" who checked the station every week or two, with particular attention being given to rejected credit cards and worthless checks received by the station. The supervisor did not check the station for cleanliness, but Bell admitted that if a station was found very dirty the occupancy might be terminated. Also, although the situation had never arisen, Bell testified that the arrangement probably would be terminated by him if the operator sold other brands of gas. It also appears that Bell sometimes suggested the price at which the gasoline should be sold, as well as ways to increase the business of the station, but that these were suggestions only.

■ When we weigh all of the facts disclosed by the record concerning Bell's dealings with Hendrix and Bass in the same manner and under the same law hereinabove applied as between Cosden and Bell we find inescapable the conclusion that the

proof at hand presented a real issue of fact as to whether Hendrix and Bass were independent contractors or employees of Bell. This being true, it was error for the trial court to grant summary judgment to Bell.

The cause is reversed as to Bell, and is remanded to the district court with instructions to reinstate the same on the docket and to proceed in a manner consistent herewith. As to Cosden, the judgment is affirmed. Costs shall be borne one-half by Bell and one-half by plaintiff.

It is so ordered.

COMPTON, C. J., and CARMODY, J., concur.