515 P.2d 1283

**CHEVRON OIL COMPANY, Petitioner,**

**v.**

**Charles M. SUTTON, Individually and as Administrator and Personal Representative of the Estate of Mona Ray Sutton, Deceased, Respondent.**

**No. 9772.**

Supreme Court of New Mexico.

Nov. 9, 1973.

Shaffer & Butt, K. Gill Shaffer, Donald L. Jones, Albuquerque, for petitioner.

Smith & Ransom, Joseph L. Smith, Arthur O. Beach, Albuquerque, for respondent.

Modrall, Sperling, Roehl, Harris & Sisk, Joseph E. Roehl, John R. Cooney, Albuquerque, N. M., for Chevron Oil Co.

Hinkle, Bondurant, Cox & Eaton, Stuart D. Shanor, Roswell, N. M., for Exxon.

Thomas M. Blume, Thomas L. Barton, Denver, Colo., for Phillips Petroleum Co.

Atwood, Malone, Mann & Cooter, Roswell, N. M., Ross L. Malone, Gen. Counsel, Otis M. Smith, Thomas W. Watkins, Detroit, Mich., for General Motors Corp.

## OPINION

McMANUS, Chief Justice.

This suit began in the District Court of Bernalillo County. Sutton, respondent, sought damages for death by wrongful act pursuant to § 22–20–1 et seq., N.M.S.A. 1953, against petitioner, Chevron Oil Company (Chevron), Lee Sharp (lessee for Chevron) and Herbert R. Buss (Sharp's employee). Sutton's wife had died from injuries sustained in a car accident when a wheel of a car repaired by Buss came off the vehicle. The district court granted Chevron's motion for a summary judgment. On appeal to the Court of Appeals, the summary judgment was reversed. Sutton v. Chevron Oil Co., 85 N. M. 604, 514 P.2d 1301 (Ct.App., June 6, 1973). The matter is now before this court on certiorari to the Court of Appeals.

One of the grounds upon which the Court of Appeals based its decision was that of strict liability. We discussed this doctrine at length in Stang v. Hertz Corporation, 83 N.M. 730, 497 P.2d 732 (1972). Nothing we said in our decision in that case can properly be enlarged or extended to embrace the factual situation here.

The main issue before this court is whether Chevron asserted enough control over its lessee to constitute a master-servant relationship. If such relationship is present, then Chevron could be found liable under the doctrine of respondeat superior. The district court granted Chevron a summary judgment on this issue and the Court of Appeals reversed on grounds that there were sufficient indicia of control to warrant the submission of the issue to a jury.

In the present case, there are two important contract provisions which must be considered. The first provided that Sharp was " * * * engaged in an independent business, and nothing herein contained shall be construed as granting to [Chevron] any right to control [Sharp's] business or operations, or the manner in which the same shall be conducted." This agreement, on its face, tends to show that there was no master-servant relationship present, but that Sharp was merely an independent contractor. However, the majority rule is that the manner in which the parties designate a relationship is not controlling, and if an act done by one person on behalf of another is in its essential nature one of agency, the one is the agent of the other, notwithstanding he is not so called. See Board of Trade v. Hammond Elevator Co., 198 U.S. 424, 25 S.Ct. 740, 49 L.Ed. 1111 (1904); Pritchard v. Smith (8th Cir. 1961), 289 F.2d 153, 88 A.L.R.2d 1146; Green v. Jones-Murphy Properties Inc., 232 Ark. 320, 335 S.W.2d 822 (1960); Van Pelt v. Paull, 6 Mich.App. 618, 150 N.W.2d 185 (1967); Nat. Mut. Bldg. & L. Assn. v. Brahan, 80 Miss. 407, 31 So. 840 (1902); McCarty v. King County Medical Service Corp., 26 Wash.2d 660, 175 P.2d 653 (1946).

Furthermore, it has long been the rule that a third person who deals with an agent is not bound by any secret or private instructions given to an agent by the principal. See Sterling v. B. & E. Constructors, Inc., 74 N.M. 708, 397 P.2d 729 (1964); South Second Livestock Auction, Inc. v. Roberts, 69 N.M. 155, 364 P.2d 859 (1961); Douglass v. Mutual Ben. Health & Accident Ass'n, 42 N.M. 190, 76 P.2d 453 (1937); Echols v. N. C. Ribble Co., 85 N.M. 240, 511 P.2d 566 (Ct.App.1973).

When such agreements do not control, "whether a station operator is an employee of an oil company or an independent contractor depends on *the facts of each case,*

the principal consideration being the control, or right to control, of the operation of the station." (Emphasis added.) Shaver v. Bell, 74 N.M. 700, 704, 397 P.2d 723, 727 (1964). In *Shaver*, supra, the court granted summary judgment for the defendant when the defendant did not send its personnel to check the premises or deal directly with the operator of the station, but did allow the station operator to display the defendant's trade mark and signs, and use its credit card facilities. However, the court noted that "slight changes in facts may result in different conclusions as to the presence of an issue for determination by the jury." In addition, the court stated that when oil company personnel check the station for cleanliness and worthless check frequency, and suggest gas prices and ways to increase the business of the station, then these additional facts are enough to submit the case to a jury. This analysis is in line with Goodman v. Brock, 83 N.M. 789, 792, 498 P.2d 676, 679 (1972), which interpreted rule 56(c), New Mexico Rules of Civil Procedure, to mean,

"* * * that the party opposing the motion [for summary judgment] is to be given the benefit of all reasonable doubts in determining whether a genuine issue exists. If there are such reasonable doubts, summary judgment should be denied. A substantial dispute as to a material fact forecloses summary judgment."

█ In the present case, there is a substantial dispute as to a material fact, and this should foreclose summary judgment. The fact in dispute is whether or not Chevron exercised such control over Sharp as to bring the doctrine of respondeat superior into play. Independent stations of the appellant were required to: (1) diligently promote the sale of Chevron's brand products; (2) remain open for certain hours and days and "meet the operating hours of competitors"; (3) keep the premises, restrooms and equipment in a "clean and orderly condition"; (4) present a "good appearance"; and (5) promote Chevron's image to the motoring public.

In addition, Sharp also (6) sold Chevron products and dispensed gasoline and oil provided by the Chevron organization; (7) received the benefit of Chevron advertising; (8) wore uniforms containing the Chevron emblem; (9) used calling cards which billed the station as "Lee Sharp Chevron and Four Wheel Drive Equipment" (apparently with Chevron's consent); and (10) the customers of the Sharp station were permitted to charge purchases of *both* products and repairs on Chevron credit cards. No one of these factors is controlling, but all are useful in determining whether or not control was present. By using all of these factors, there is a sufficient factual question as to whether or not there was an actual master-servant relationship.

Even if there were not a material issue as to whether or not Chevron asserted enough control as to create an actual master-servant relationship, there still exists a material issue as to whether or not Chevron had clothed the lessee with apparent authority.

In 3 Am.Jur.2d, Agency, § 74, at 477 (1962), it is stated:

"The apparent authority of an agent is to be determined by the acts of the principal, and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal by his acts or conduct has clothed the agent with the appearance of authority. * * * The apparent authority of an agent results from statements, conduct, lack of ordinary care, or other manifestation of the principal's consent, whereby third persons are justified in believing that the agent is acting within his authority. * * * The acquiescence of the principal in an extention of his authority by an agent in the transaction in question may be sufficient to create the appearance of authority in the agent to such act. * * * In such case, the appearance of authority is created because of the fact that the third person is entitled

to assume that the principal is cognizant of authority and would forbid it if it were unauthorized."

Also see Gizzi v. Texaco, Inc., 437 F.2d 308 (3rd Cir. 1971), cert. denied, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 57; McNutt Oil & Refining Co., Inc. v. Mimbres Valley Bank, 174 F.2d 311 (10th Cir. 1949); South Second Livestock Auction v. Roberts, supra; Raulie v. Jackson-Horne Grocery, 48 N.M. 556, 154 P.2d 231 (1944); Standard Oil Co. v. Gentry, 241 Ala. 62, 1 So.2d 29 (1941); Clark v. Texaco, Inc., 382 S.W.2d 953 (Tex.Civ.App.1964).

■ Here, Chevron knew of and allowed Sharp to conduct his Four Wheel Drive Fixit Shop and it would be reasonable to assume that if Chevron did not want Sharp to continue such a business, it should have forbidden such activities or at least have put the *public* on notice that Sharp did not have the authority to make repairs and that it would not be responsible for such repair activities. Instead of putting the public on notice that Sharp did not have the authority to make such repairs, Chevron advertised in the telephone directory that its stations performed auto repairs, and that its repairmen were skillful. Sutton relied on such statements, in addition to relying on signs, uniforms and credit card privileges which indicated to the public that Sharp was under the control of and was an agent of Chevron. See Gizzi v. Texaco, Inc., supra, for similar facts. Thus, because Sutton relied on such statements and indicia of authority, there is a material question of fact present as to whether or not Sharp had been clothed with apparent authority by Chevron to act as Chevron's agent.

The second contractual provision is to the effect that Chevron " * * * has no right to exercise any control over any of [Sharp's] employees, all of whom are entirely under the control and direction of [Sharp] who shall be responsible for their actions and omissions."

■ The general rule is that a principal is not liable for the wrongful act of an assistant who has been procured by his agent unless the latter can be said to have been clothed with authority to employ help. See Gibbons v. Naritoka, 102 Cal.App. 669, 283 P. 845 (1929); Carter v. Bishop, 209 Ga. 919, 76 S.E.2d 784 (1953); Thyssen v. Davenport Ice & Cold Storage Company, 134 Iowa 749, 112 N.W. 177 (1907); Byrne v. Pittsburg Brewing Company, 259 Pa. 357, 103 A. 53 (1918). Such authority may, however, be implied from the nature of the work to be performed. As stated in Monetti v. Standard Oil Co., 195 So. 89 (La.App.1940):

"We find that * * * where the work for the performance of which the contract is entered into is such as to indicate the necessity of the employment of a subagent, there is liability in the principal for the acts of the subagent. * * *"

Here, the record shows that it would be quite impracticable for Sharp to have operated the Chevron gas station by himself. In fact, various clauses in the contract show clearly that the parties contemplated that such an assistant, or possibly more, should be employed. Furthermore, Gulf Refining Co. v. Brown, 93 F.2d 870, 116 A.L.R. 449 (4th Cir. 1938) states:

"It is clear that a principal may not escape liability to third persons for the torts of a subagent, appointed by his agent with his consent, merely by entering into a contract with his agent under which the latter assumes sole responsibility for the subagent's conduct."

■ Therefore, if a master-servant relationship in fact existed, the liability of the subagent may be imputed to Chevron regardless of the language in the written contract to the contrary.

The cause is reversed and remanded to the District Court of Bernalillo County for action consistent with this opinion.

It is so ordered.

OMAN, MONTOYA and MARTINEZ, JJ., concur.

STEPHENSON, J., not participating.