928 P.2d 263

Maria CIUP, in her own capacity, Maria Ciup and Mihai Ciup as personal representatives of Mihai Ciup, deceased, and Marion Ionita, Plaintiffs–Appellants,

v.

CHEVRON U.S.A., INC., Defendant–Appellee.

No. 23371.

Supreme Court of New Mexico.

Sept. 30, 1996.

Rehearing Denied Nov. 26, 1996.

Randi McGinn & Associates, P.A., Randi McGinn, William B. Towle, Albuquerque, for Plaintiffs–Appellants.

Sager, Curran, Sturges & Tepper, P.C., Paul E. Houston, Sarah Curry Smith, Albuquerque, for Defendant–Appellee.

## OPINION

MINZNER, Justice.

1. Plaintiffs appeal the trial court's grant of summary judgment in favor of Chevron U.S.A., Inc. They contend that the trial court erred in determining that Chevron was not liable for assault resulting from the robbery of an independently-owned and independently-operated service station dispensing Chevron gasoline. They also contend that the trial court erred in proceeding with a motion for summary judgment before disposition of a pending motion to compel discovery. We conclude that the trial court properly granted summary judgment to Chevron, because Plaintiff failed to rebut Chevron's showing that it had no right to control the day-to-day operation of the gas station. We also conclude that Plaintiffs failed to preserve the second issue. ·Accordingly, we affirm.

## FACTS

2. This case arose out of the attempted robbery of a Chevron gas station. In 1993, Reis Lopez shot and seriously injured the gas station attendant, Marion Ionita, and shot and killed a visitor to the station, Mihai Ciup. *See generally State v. Lopez,* 122 N.M. 63, 920 P.2d 1017 (1996) (affirming Lopez's convictions for felony murder and aggravated battery arising out of incident). Maria Ciup, in her own capacity and as personal representative of Mihai Ciup, and Marion Ionita (collectively Plaintiffs) sued for personal injury and wrongful death arising from the robbery attempt. Plaintiffs sued Nicolae Spilca, operator and lessee of the gas station, and Rio Grande Oil Co., Inc., the owner-lessor of the gas station and distributor of Chevron gasoline in New Mexico. Additionally, they sued Chevron, which manufactured the gasoline sold at the Chevron-branded station.

3. Both Chevron and Rio Grande moved for summary judgment, asserting that Spilca operated the gas station as an independent contractor, and that neither Chevron nor Rio Grande exerted sufficient control over the gas station's operation to support vicarious liability on theories of respondeat superior or agency or to support recovery on the basis of premises liability. The record indicates that the trial court stayed the first hearing for summary judgment to allow Plaintiffs an additional sixty days to pursue discovery. During the subsequent summary judgment hearing, the court noted that an entire year had passed since the filing of the original complaint. The court proceeded with a full hearing on the merits, and subsequently granted Chevron's motion for summary judgment, but denied it as to Rio Grande.

4. Ciup appealed. The Court of Appeals certified the following question to this Court: What is the proper scope of liability of a national corporation, which allows a local service station to use its logo and products without a franchise agreement, for an assault occurring on the service station premises?

## DISCUSSION

### A. Evidence of Control

5. As a general rule, a person does not have a duty to protect another from harm caused by the criminal acts of third persons unless the person has a special relationship with the other giving rise to a duty. *Rummel v. Edgemont Realty Partners, Ltd.,* 116 N.M. 23, 26, 859 P.2d 491, 494 (Ct.App.), *cert. denied,* 115 N.M. 709, 858 P.2d 85 (1993). A duty flowing from actual or apparent agency arises with the existence of some degree of control by the principal over the conduct and activities of the agent. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 70, at 508 (5th ed. 1984). The degree of control giving rise to liability depends on the particular facts of each case. *Chevron Oil Co. v. Sutton,* 85 N.M. 679, 681–82, 515 P.2d 1283, 1285–86 (1973), relying on *Shaver v. Bell,* 74 N.M. 700, 705, 397 P.2d 723, 727 (1964) ("every case must ultimately be decided on its unique facts"). In the context of tort liability on gas station premises, a court must closely examine the oil company's control or right to control the actual day-to-day operation of the service station. *Shaver,* 74 N.M. at 704, 397 P.2d at 727.

6. Plaintiffs argue that by virtue of the nature of the franchise relationship and the integrated business enterprise within which that relationship exists, Chevron retained sufficient control to give rise to a duty to ensure that the Spilca gas station was operated in a safe manner. Plaintiffs argue, in effect, that Chevron had a special relationship within the exception to the general rule. On the other hand, Chevron argues that the extent of its involvement with the Spilca station was limited. Chevron contends it was protecting its trademark, and that protecting a trademark does not constitute sufficient control to give rise to a duty to protect the premises. *See Shaver,* 74 N.M. at 705, 397 P.2d at 727 (stating that evidence of a right to control cannot be proved merely in the display of the oil company's trademark and signs); *Cislaw v. Southland Corp.,* 4 Cal. App.4th 1284, 6 Cal.Rptr.2d 386, 393 (1992) (explaining that a "franchisor must be permitted to retain such control as is necessary to protect and maintain its trademark, trade name and good will, without the risk of creating an agency relationship with its franchisees").

7. Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Koenig v. Perez,* 104 N.M. 664, 726 P.2d 341 (1986). A movant for summary judgment need only make a prima facie showing that there is no genuine issue of material fact, and that on the undisputed material facts, judgment is appropriate as a matter of law; the burden then shifts to the opponent to show at least a reasonable doubt, rather than a slight doubt, as to the existence of a genuine issue of fact. *Id.* at 666, 726 P.2d at 343. Where the movant has made a prima facie showing, the opponent cannot rely on the allegations contained in its complaint or upon the argument or contention of counsel to defeat it. *Oschwald v. Christie,* 95 N.M. 251, 253, 620 P.2d 1276, 1278 (1980). Rather, the opponent must come forward and establish with admissible evidence that a genuine issue of fact exists. *Tinley v. Davis,* 94 N.M. 296, 297, 609 P.2d 1252, 1253 (Ct.App.1980).

8. As part of its burden in moving for summary judgment, Chevron submitted written contracts entered between the various parties to demonstrate that it did not exert any control over the day-to-day operation of the gas station and argued it was not subject to vicarious liability under any theory. *See, e.g., Chevron Oil Co.,* 85 N.M. at 681–82, 515 P.2d at 1285–86; *Shaver,* 74 N.M. at 704, 397 P.2d at 726. We agree with Chevron that the trial court did not err in granting summary judgment on these facts. We are not persuaded that Plaintiffs have established a genuine issue of fact regarding control nor that Chevron's particular status as a franchisor precludes summary judgment.

9. While not necessarily dispositive, it is useful to consider the types of contracts the parties entered in order to determine their expectations regarding their respective duties. Spilca and Rio Grande entered into two written contracts: (1) a station lease agreement, which created a landlord-tenant relationship allowing Spilca to operate the retail gas station; and (2) a sales agreement, which governed Rio Grande's distribution of gas and petroleum products to Spilca for retail sale. In turn, Rio Grande and Chevron were bound by two contracts: (1) an "authorization letter for branded retail outlets," which authorized the use of Chevron's insignia at the gas station; and (2) a "Chevron Branded Jobber Petroleum Products Agreement," which governed the sale of Chevron products to Rio Grande for retail distribution.

10. We recognize that sometimes a franchise agreement may provide a franchisor with control over a franchisee's day-to-day operations. *See, e.g., Crinkley v. Holiday Inns, Inc.,* 844 F.2d 156, 159 (4th Cir.1988); *Spencer v. Resorts & Spas, Ltd.,* 684 F.Supp. 842, 843 (M.D.Pa.1988); *Cislaw,* 6 Cal. Rptr.2d at 394; *O'Bryant v. Century 21 S. Cent. States, Inc.,* 899 S.W.2d 270, 272 (Tex. Ct.App.1995); *cf. Ortega v. General Motors Corp.,* 392 So.2d 40 (Fla.Dist.Ct.App.1980). However, in this case, Chevron did not directly enter into any contract with Spilca, and nothing in any of the contracts indicates that Chevron either had the right to, or purported to, govern the gas station's operation sufficiently to create a duty to protect invitees and employees. In fact, Chevron was expressly prohibited from interfering with the gas station's daily business operations.

11. The Chevron Branded Jobber Petroleum Products Agreement entered into between Chevron and Rio Grande provides, in pertinent part:

> 10. *Conduct of Jobber's Business.* (a) In the performance of this agreement Jobber is engaged in an independent business and nothing herein contained shall be construed as granting Company [Chevron] any right to control or direct Jobber with respect to Jobber's conduct of such business. Company [Chevron] has no right to exercise any control over any of Jobber's employees, all of whom are entirely under the control and direction of Jobber, who shall be responsible for their actions and omissions.

On this express showing of the lack of an agency relationship between Chevron and Rio Grande, the burden shifted to Plaintiffs to establish that a material issue exists regarding Chevron's right to control the opera-

tions or premises in order to preclude summary judgment. *See Oschwald,* 95 N.M. at 254, 620 P.2d at 1279.

12. Plaintiffs assert that Chevron took the following affirmative steps with the intent to control the gas station's operation: (1) Chevron sent inspectors to the site twice a year to check on the image, inspect the gasoline and oil products, and provide promotional materials; (2) Chevron posted a toll-free number at the station where customers could voice their concerns; and (3) Chevron placed restrictions on the sale or rental of pornographic materials at the station. Plaintiffs also contend that Chevron, by these acts and conduct, has clothed its agents, Rio Grande Oil and Spilca, with the appearance of authority sufficient to subject it to vicarious liability for the acts of its agents.

13. In satisfying their burden, however, Plaintiffs must show that Chevron has exercised control over the gas station's operation beyond that necessary to protect its trademark, because protecting a trademark does not constitute sufficient control over the gas station's operation under existing case law. *See Wood v. Shell Oil Co.,* 495 So.2d 1034, 1036–1037 (Ala.1986) (stating that an oil company's control over "architectural design, style, color scheme, and layout" of service station, and requirement that lessee/service station operator maintain premises in conformity with oil company's "Appearance Guide," were not sufficient indicia of control to make lessee/service station operator the oil company's agent); *Cislaw,* 6 Cal.Rptr.2d at 392 (franchisor's interest in reputation of its entire system allows it to exercise certain controls over the enterprise without running the risk of transforming an independent contractor/franchisee into an agent); *Greil v. Travelodge Int'l, Inc.,* 186 Ill.App.3d 1061, 133 Ill.Dec. 850, 854, 541 N.E.2d 1288, 1292 (holding that actual agency exists only if franchisor imposed controls beyond those necessary to protect its trademark), *appeal denied,* 127 Ill.2d 616, 136 Ill.Dec. 586, 545 N.E.2d 110 (1989); *Shaver,* 74 N.M. at 705, 397 P.2d at 727 (stating that mere use of trademark does not impute liability; "it is common knowledge that distinctive colors and trade mark signs are displayed at filling stations by independent dealers of gasoline");

*Murphy v. Holiday Inns, Inc.,* 216 Va. 490, 219 S.E.2d 874, 877–878 (1975) (franchisor's protection of the trademark does not create a principal-agent or master-servant relationship; use of trademark was to benefit both parties, and franchisor lacked control over the motel's daily operations). We hold that Plaintiffs have not met this burden.

14. Plaintiffs conceded that it was Rio Grande who controlled the operation of Spilca's gas station. Rio Grande visited the gas station weekly, controlled the price at which the gas was sold, required Spilca to maintain minimum hours of operation, handled all financial transactions, and deposited the sales proceeds into a bank account in its own name. We conclude that Plaintiffs have not proved that Chevron had any control over the gas station's daily operation. Chevron's bi-annual visits and posting of a toll-free number as a check on the proprietary use of its trademark does not create a jury question on the issue of apparent agency or right of control.

15. Plaintiffs rely on *Chevron Oil Co.* to argue that material issues of fact regarding the extent of control Chevron exerted over the gas station's operation remain unanswered, thus precluding summary judgment to Chevron. We conclude that the facts in *Chevron Oil Co.* are distinguishable.

16. *Chevron Oil Co.* involved an injury arising from defective repair work performed on the plaintiff's automobile. Chevron owned the gas station where the tort occurred, and the plaintiff proved that Chevron retained control over the lessee by requiring it, by contract, to:

(1) diligently promote the sale of Chevron's brand products; (2) remain open for certain hours and days and "meet the operating hours of competitors"; (3) keep the premises, restrooms and equipment in a "clean and orderly condition"; (4) present a "good appearance"; and (5) promote Chevron's image to the motoring public.

85 N.M. at 682, 515 P.2d at 1286. The plaintiff in *Chevron Oil Co.* relied upon Chevron's reputation to provide skillful and reliable repair services. *Id.* at 683, 515 P.2d at 1287. Under these circumstances, the Court

held that there was a material question of fact regarding whether the gas station operator had been clothed with the apparent authority to act as Chevron's agent. *Id.* In the present case, Chevron did not own the gas station upon which the shooting occurred; Rio Grande owned the premises and leased them to Spilca as operator. In addition, there has been no indication that Rio Grande and Spilca operated the station to Plaintiffs' detriment in reliance upon any representation by Chevron proclaiming Chevron-branded gas stations as being particularly safe enterprises or that Mihai Ciup visited the station in reliance on such a representation. Absent such reliance, a theory of apparent agency lacks evidentiary support, because justifiable reliance is an element that must be proved. *See, id.* at 682, 683, 515 P.2d at 1286, 1287.

17. Courts that have considered the issue of tort liability on gas station premises have also analyzed the question of liability based on landlord-tenant law. *See, e.g., Shaver,* 74 N.M. at 707, 397 P.2d at 728–29; *Exxon Corp. v. Tidwell,* 867 S.W.2d 19 (Tex.1993). However, nothing indicates that Chevron and Spilca were bound by such a relationship. The contracts entered into by the parties demonstrate that Rio Grande was the landlord and Spilca was the tenant. Chevron had no direct contact whatsoever with Spilca; Chevron had arranged to sell gasoline to Rio Grande, which in turn employed Spilca to sell the gasoline. Spilca did not report to Chevron on any aspect of the service station's operation. Chevron had no control over the employment or training of station employees, nor did it have any input into station security or the installation of security devices. Chevron's inspection visits to the Spilca site ensured proper usage of its trademark and image.

18. Accordingly, we conclude that Plaintiffs have failed to provide a prima facie showing of necessary control by Chevron or other bases to impute liability under *Shaver, Chevron Oil Co.,* or other analogous out-of-state authority. Existing case law limits the duty owed by franchisors such as Chevron to persons similarly situated to Plaintiffs. Plaintiffs have established no facts that would justify a conclusion that existing case law does not control resolution of this appeal.

■ 19. "Policy determines duty.... Courts should make policy in order to determine duty only when the body politic has not spoken and only with the understanding that any misperception of the public mind may be corrected shortly by the legislature." *Torres v. State,* 119 N.M. 609, 612, 894 P.2d 386, 389 (1995). In New Mexico, statutory regulation of franchises has had specific, limited purposes. *See, e.g., Key v. Chrysler Motors Corp.,* 121 N.M. 764, 772, 918 P.2d 350, 356 (1996) (discussing the New Mexico Motor Vehicle Dealers Franchising Act); *id.* at 774, 918 P.2d at 358 (discussing the Franchise Termination Act). We have described the law of franchising as "developing within a wide range of statutory schemes." *Id.* At this point in time, then, we conclude that the Legislature has created no express or implied duty on which we may base an extension of the common law. *Cf. Lopez v. Maez,* 98 N.M. 625, 630–31, 651 P.2d 1269, 1274–75 (1982) (recognizing duty arising out of statute and regulation proscribing sale of alcohol); *see also* NMSA 1978, § 41–11–1 (Repl. Pamp.1996) (subsequently enacted statutory provision governing tort liability for alcoholic liquor sales or service). Although we have recognized that common-law principles may become outmoded, *see Lopez,* 98 N.M. at 629–30, 651 P.2d at 1273–74, the case law relevant to this fact pattern appears to be evolving in response to changing conditions. *See, e.g., Exxon Corp.,* 867 S.W.2d at 21–22 (recognizing the development of a hybrid body of law governing oil companies and their service station lessees). Under these circumstances, we have no basis for expanding liability by recognizing a duty other than that arising under existing case law.

20. There being no showing of a genuine issue of material fact, the trial court did not err in granting Chevron summary judgment. Plaintiffs have not established a basis for liability under existing case law or statutory authority.

## B. *Inadequate Opportunity for Discovery*

21. Plaintiffs also contend that the trial court erred when it proceeded with the sum-

mary judgment motion before ruling on their motion to compel further discovery. As a result, Plaintiffs argue that they did not have an adequate opportunity to conduct further discovery into Chevron's control over the station.

 22. We have reviewed the record thoroughly and conclude that Plaintiffs have failed to preserve the issue for appeal. "To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked...." NMRA 1996, 12–216(A). "One *preserves* an issue for appeal by invoking a ruling from the court on the question," *State v. Hodge,* 118 N.M. 410, 882 P.2d 1 (1994) (emphasis in original), the purpose of which is to alert the trial court to a claim of error and give the court an opportunity to correct any mistake. *Diversified Dev. & Inv. v. Heil,* 119 N.M. 290, 295, 889 P.2d 1212, 1213 (1995). In their response to summary judgment, Plaintiffs did not notify the trial court that they were hampered in their discovery efforts, and they did not request a continuance until such time as their motion to compel discovery was decided. Although the discovery disputes were discussed at the time of the hearing on the motion for summary judgment, Plaintiffs' counsel specifically requested that the trial court "stick to the motion for summary judgment." Plaintiffs did not indicate to the trial court that a decision on the motion for summary judgment would be premature because further discovery was necessary. By not indicating to the trial court that its resolution of the motion for summary judgment should be deferred until the court had resolved any discovery issues, Plaintiffs waived any issue on appeal.

### CONCLUSION

23. For the reasons stated above, we conclude that the trial court properly granted summary judgment in Chevron's favor. Plaintiffs have failed to rebut Chevron's prima facie showing that no material issue existed that would determine Chevron's right to control the premises. Further, Plaintiffs have not preserved the issue of whether their motion to compel should have been decided before the motion for summary judgment.

We therefore affirm the judgment of the trial court.

24. **IT IS SO ORDERED.**

RANSOM J., and ROBERT HAYES SCOTT, District Judge, sitting by designation, concur.