### INTERNATIONAL EXTERMINATOR CORPORATION, Plaintiff,
v.
### UNITED STATES of America, Defendant.
Civ. A. No. 4–851.

United States District Court
N. D. Texas,
Fort Worth Division.
Oct. 27, 1969.

Brown, Herman, Scott, Young & Dean, by Ardell M. Young, Fort Worth, Tex., for plaintiff.

Gene Castleberry, Atty., Tax Dept., Fort Worth, Tex., for defendant.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

This is a suit instituted by International Exterminator Corporation to recover from the United States of America the sum of $4,311.29, plus interest, which Plaintiff contends was erroneously and illegally assessed and collected by the Defendant from the Plaintiff for Federal Unemployment Taxes, plus penalty and interest, for the calendar year 1962.

The stipulated and agreed facts in regard to date of the assessment, notice thereof and demand for payment, date of payment, claim for refund, receipt of the claim, and the filing of this suit demonstrate that the suit was timely filed and that this Court has jurisdiction of the cause.

The sole question for decision in this case is whether or not thirty-seven individuals whose names and addresses appear on Plaintiff's Exhibit No. 1 were, during the calendar year 1962, independent contractors or employees of Plaintiff International Exterminator Corporation (sometimes hereafter referred to as "taxpayer"). The Court is of the opinion that such individuals were independent contractors and that judgment should be rendered for the Plaintiff.

Plaintiff's Exhibit No. 1 contains the names and addresses of all of Plaintiff's pest-control operators during the year 1962. Said exhibit also shows the amount of commissions the Plaintiff paid to each such operator during the calendar year 1962. If a date appears below the name of any individual on said exhibit, such date shows that said individual ceased to be a contractor of the Plaintiff on said date. These operators are located over an area extending from Lubbock, Texas, on the west to Wichita Falls, Texas, Ardmore, Oklahoma, and Texarkana, Arkansas, on the north, to Shreveport, Louisiana, on the east and to Beaumont, Houston and Corpus Christi on the south. During 1962 the earned commissions of said operators who worked the entire year ranged from $34,817.64 paid to W. C. Hinkle to $1,500.01 paid to J. R. Layne.

Mr. John N. Baker, Vice President of Plaintiff taxpayer, testified that each of said 37 operators worked under a written contract made and entered into by said operators and International Exterminator Corporation and that this method of doing business had been in use since before the business was incorporated by Mr. Harlan K. Baker in 1948. This testimony was corroborated by the company accountant, Mr. Milton B. Capers, a certified public accountant, who had been acting in such capacity since 1948. A form of contract was introduced in evidence as Plaintiff's Exhibit No. 2, and although the contracts entered into many years ago varied in some minor details

from said exhibit, the relationship between the company and the operators and the method of doing business as disclosed by the contracts were the same without exception. The individual contracts of each operator who testified were introduced in evidence and each contract contained the following:

"Contractor agrees that he will, at his own cost and expense, and to the best of his skill and ability, and at such times, and in such manner as Contractor may think best, service or cause to be serviced at least twice per month the said Customers of the Manufacturer in said territory in accordance with the service contract issued to the Customer. Contractor is an independent Contractor hereunder, and may come and go as he pleases, perform the services hereunder at such hours and times as he pleases, hire and discharge and control his own help, maintain his own office, and be responsible for the acts and conduct of anyone employed by Contractor.

" * * *

"This contract shall be in full force and effect from the date hereof, and shall remain in effect until terminated by one of the parties hereto giving the other party hereto ten days written notice at his last known post office address of his intention to cancel same."

Mr. John N. Baker also testified that said operators work when, where and how they please; that the company does not supervise the work of the operators and that the company has no foreman, field superintendents or work supervisors. Each operator owns his own truck or other motor vehicle and pays for his own gasoline, oil and motor vehicle repairs. Furthermore, each operator carries his own motor vehicle insurance and hires, pays and discharges his own employees without consulting or obtaining the approval of International Exterminator Corporation. Each operator makes his own vacation plans both as to time and duration. Complaints are referred to the operator who serviced the account. Customers' statements are prepared each month by the company, for which service each operator pays one-half of one per cent of his gross commissions. They are mailed directly to the customers or to the operator as the operator may direct. If a customer fails to pay, the operator determines when the bill should be charged off as a bad debt. Some of the operators are engaged in other businesses, such as farming, livestock raising and the management of real estate holdings. Some of the operators have their own offices and office furniture, while in other instances the company furnishes an office. In 1962 the company had offices in Corsicana and Houston where an employee of the company answered the telephone and receipted for merchandise. Such employees were carried on the payroll with payroll deductions for Social Security, Unemployment and Withholding Taxes. The company now has three such offices in which an employee works. In 1962 International Exterminator Corporation had eight officers and employees. These consisted of Mr. Harlan K. Baker, President, Mr. John N. Baker, Vice President, a salesman, a warehouseman and four clerical employees, which included the two girls who worked in the offices at Corsicana and Houston. The usual commission paid to salesmen is 60 per cent of the gross commission, but when an operator's monthly commissions reach $1,500, the operator's share was increased to 65 per cent. The only deviation from the basic commission schedule was in those instances where new operators were obtained for undeveloped territory. In such instances, the new operator signed a contract (Plaintiff's Exhibit No. 2) and then was given a drawing account or a guaranteed minimum commission until his 60 per cent of the commissions reached the guaranteed amount, at which time the operator then received the straight commission provided for in the contract. This arrangement was necessary in order for new operators to live while they were getting started and building up their territories.

Five representative operators testified for the Plaintiff. Their names, addresses and commissions received during the year 1962 are as follows:

| Name | Address | Commission |
|------|---------|-----------|
| W. C. Hinkle | 2820 Tyron Rd. Longview, Texas | $34,817.64 |
| Don Farmer | Route 1 Corsicana, Texas | $11,068.16 |
| C. O. Crawford | Box 495 Jacksonville, Texas | $33,887.92 |
| E. D. Fairbanks | N. W. 15th St. Ardmore, Okla. | $ 9,136.45 |
| Odell Britton | 1100 Judd St. Ft. Worth, Texas | $ 4,500.13 |

———————◆———————

The Income Tax Returns for the year 1962 of W. C. Hinkle, Don Farmer and C. O. Crawford were introduced in evidence. Said returns show that each of said operators reported his commissions on Schedule C, Profit (or Loss) from Business or Profession, and claimed his business deductions.

Neither E. D. Fairbanks nor Odell Britton was able to produce his copy of his 1962 return, but each testified that he reported his earned commissions on his return and paid the taxes due thereon. The testimony of each of said operators was substantially the same. Each worked under a written contract that was introduced in evidence, and which contained the provisions set forth above. Each serviced his customers without supervision or direction. Each worked when, where and how he chose to work. He selected his own chemicals and methods. He owned his own motor vehicle and carried his own insurance thereon. With respect to public liability and property damage insurance on work performed by him, both the operator and the company carried such insurance and the cost thereof was shared, 60 per cent thereof being paid by the company and 40 per cent by the operator. Each hired and discharged his own help without the prior knowledge, consent or approval of the company. Each selected his own route and arranged his own work schedule. To their knowledge, the company has no foreman, field superintendents or work supervisors. Each operator corroborated the testimony of Mr. John N. Baker not only with respect to the above, but also on such matters as the handling of complaints, the collection of accounts and vacations. Messrs. Hinkle, Farmer and Crawford testified concerning other businesses in which they had been engaged while an operator for International Exterminator Corporation.

Mr. Milton B. Capers, the company accountant, testified that since 1948 the books and records of the company have been kept in the same manner. Such books and records include entries showing payments to operators. He has prepared the Income Tax Return for the Plaintiff every year since 1948, and the general format thereof has remained unchanged. Mr. Earl Bates, an agent for the Internal Revenue Service, spent approximately 40 hours examining the return for the year 1961. Such examination included a review of payments to operators. After such examination and review, the 1961 return was accepted as filed. The 1962 return was examined by another Internal Revenue Agent, Mr. Richard Baccus. After his examination, the Defendant, based upon Mr. Baccus' contention that the pest-control operators were employees rather than independent contractors, asserted a claim against the Plaintiff for $290,811.09, which sum Defendant contends is due for Withholding,

Social Security and Unemployment Taxes for the years 1961 through 1964.

B & O Enterprises is a corporation. Its stock is owned by Mr. Harlan K. Baker, Mr. John N. Baker and Mrs. Nancy Otto. Mrs. Otto is a daughter of Mr. Harlan K. Baker and a sister of Mr. John N. Baker. All of the stock of International Exterminator Corporation is owned by Mr. Harlan K. Baker and Mr. and Mrs. John N. Baker. The evidence showed that B & O Enterprises owns various pieces of real estate. In some instances said corporation rented offices and warehouses to the operators, while in other instances, said corporation rented the offices and warehouses to International Exterminator Corporation, which furnished said offices and warehouses to the operators free of charge.

The Defendant called three witnesses. They were Mr. William G. Browne, Mr. Burney Dural Wilson, Jr. and Mr. Eugene W. Smith. Mr. Browne, an employee of the Southwestern Bell Telephone Company, testified concerning the advertising International Exterminator Corporation did in the telephone books published in the towns where the various operators were located. The Defendant also showed that the Plaintiff furnished business cards to the various operators on which appeared the operator's name and the Plaintiff's name and business symbol. It was also shown that the Defendant furnished stationery, with the Plaintiff's letterhead thereon to some of the operators.

Mr. Barney Dural Wilson testified that he signed a contract with International Exterminator Corporation on June 12, 1961; that he was recommended to the Plaintiff by an operator, Mr. Ward, and that he was trained by Mr. Ward and another operator, Mr. Gardner. The contract was introduced in evidence. Mr. Wilson testified that International Exterminator Corporation guaranteed him $80 per week when he went to work and also agreed to pay his gasoline, oil and automobile expense. This arrangement was to be in effect until his 60 per cent of the commissions equaled the amount of the guarantee at which time he was to go on a strictly commission basis. Mr. Wilson also testified that after his training period of about two months, he worked independently and without supervision or direction. He also stated that he sold several new accounts and it was his impression that the Plaintiff had the right to reject them, although it never did so. Occasionally he purchased supplies on his own and was reimbursed by the Plaintiff. His commissions never did exceed his guarantee and he resigned on April 2, 1962 (Plaintiff's Exhibit 11). In his resignation, Mr. Wilson stated that he would continue to service the contracts until the company could get a new operator.

Mr. Eugene W. Smith testified that he also signed a contract with the Plaintiff when he went to work (Defendant's Exhibit No. 9). Said contract bears date of February 10, 1964. He resigned effective September 1, 1965. He was not an operator for the Plaintiff during the year 1962. At the time he signed a contract with the Plaintiff, Mr. Harlan K. Baker agreed that he would be paid a drawing account of $300 per month and that such drawing account would continue until his commissions exceeded said amount. His monthly commissions exceeded $300 only one month, at which time he received his commission. This agreement is evidenced by a memorandum attached to the contract (Defendant's Exhibit No. 9). Mr. Smith worked independently and without supervision or direction except on a hospital job and a state school job in Denton. The evidence showed that Mr. Smith did not have the experience to handle this job and he needed and wanted help. Government contends that this incident shows an exercise of control over the operators by Plaintiff in that it demonstrates that taxpayer could send an operator, or contractor, from one area to another. This single and isolated variation from the normal method of operating should not be held to show that degree of control

over all operators which would constitute them employees instead of independent contractors, particularly in view of Smith's desire for help. On one occasion Smith went with Mr. Baker on a termite job. He trained with operators at Ardmore, Oklahoma, Plano, Texas, and Sherman, Texas. He stated that he attended short courses after he signed his contract, for which the Plaintiff paid and that the Plaintiff also paid his expenses while he was taking such short courses. The testimony of the other operators who testified on this subject was to the contrary. He also stated that Mr. Tharp, who worked for the Plaintiff, came to Denton and checked to see if some of the customers were satisfied with his work. Mr. Smith admitted that Mr. Tharp's purpose in doing this was to assist Mr. Tharp's sales efforts with potential customers. In his resignation dated August 26, 1965, Mr. Smith stated that he was resigning because the chemicals were injurious to his health.

Defendant seeks to reflect on Plaintiff's case by directing the Court's attention to conflicts and inconsistencies in the testimony. These conflicts are apparent and the inconsistencies are immaterial. Testimony of witnesses in a lawsuit indeed might be suspect, if identical and entirely in the same language. The attack made fails to weaken the overall picture gained from the entire record.

Defendant further argues that it would be unreasonable for the Plaintiff to fail to retain the right to control the means and methods by which the results were achieved for the reason that the operators were on occasions doing work that was inherently dangerous. Plaintiff points out that in making such argument Defendant completely ignores all considerations that may have influenced Plaintiff's decision other than tort liability. It is correct that Plaintiff taxpayer does not escape liability in tort to third parties when one of its independent contractors is engaged in work that is inherently dangerous. This was the reason why it was wise that the Plaintiff taxpayer and the operators carried public liability insurance on the work performed by the operators with each paying his proportionate share of the cost of such insurance. Such an arrangement is neither new nor novel. In addition, Plaintiff's customers were numerous, scattered over large areas, making virtually impossible the exercise of control over the means and methods by which the results were to be accomplished. In its brief, Defendant concedes that the Plaintiff had a lawful right to decide how it would carry on its business. It is the opinion of the Court that such decision was based upon a sound business judgment.

The specific section of said Act that is applicable here is 26 U.S.C.A. § 3306(i) which provides in part as follows:

"Employee—For purposes of this chapter, the term 'employee' includes an officer of a corporation, but such term *does not include*

(1) any individual who, *under the usual common law rules* applicable in determining the employer-employee relationship, has the *status of an* independent contractor," (Emphasis added)

This provision is clear and unequivocal. It seems that some effort has been exerted to broaden the scope and to substitute for the common law rule the concept that in determining who are employees and independent contractors the "economic realities" of the relationship should govern. United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947). The history of the construction of the statute is well related in United States v. Thorson, 1 Cir., 282 F.2d 157 (1960) and United States v. Crawford Packing Co., 5 Cir., 330 F.2d 194 (1964). The following quote from the *Thorson* case is pertinent:

"The clear language of the statutes as quoted earlier in this opinion viewed in the light of the foregoing legis-

lative history can leave no room whatever to doubt that the court's function in cases like this is realistically to apply the common-law test in deciding whether the 'applicators' with which we are concerned are employees of the taxpayers or whether their relationship to the taxpayers is that of independent contractors." 282 F.2d 161–162.

We turn to the common law for a determination of the issue. Various tests and treatises contain definitions of the term "independent contractor" and such definitions vary in precise wording, but for the most part are substantially the same. In 64 Tex.Jur.2d 446, "Words and Phrases", the following definitions appear:

"An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right of control with respect to his physical conduct in performance of the undertaking. Ordinarily, he undertakes to perform a service with his own instrumentalities according to his own means and methods or a previously agreed plan without being subject to the other's orders or control with respect to the details of the work. 30 Tex.Jur.2d Independent Contractors § 2.

"An independent contractor is unlike an agent in that he is responsible to his employer only for the result of the work contracted to be performed. The employer has no control over the contractor's manner of doing the work, nor any right to select the contractor's employees or supervise their work. 2 Tex.Jur.2d Agency § 5."

To the same effect is 27 Am.Jur. 381–483, "Independent Contractors" § 2.

Again, in 30 Tex.Jur.2d 481, "Independent Contractors", § 6, the following appears:

"Though there is no single rule that is absolute and definite, the outstanding and ultimately decisive consideration in determining the independence of the contract is the employer's right to control the details of the work * * *. Thus, if the employer is interested only in the results, and there is left to the party performing such service complete control of the details as to the method and manner of such performance, then the relationship of independent contractor exists."

Each of the operators had substantially the same written contract with Plaintiff taxpayer, the pertinent provision of which has been quoted above. It does not appear that said contracts were a sham or subterfuge to conceal the existence of a different relationship. Texas Company v. Wheat, 140 Tex. 468, 168 S.W.2d 632 (1943). See also Newspapers, Inc. v. Love, Tex.Sup.Ct., 380 S.W.2d 582; Carter Publications, Inc. v. Davis, Tex.Civ.App., 68 S.W.2d 640 (1934); Mid-Continent Freight Lines, Inc. v. Carter Publications, Inc., Tex.Civ.App., 336 S.W.2d 885 (1960), writ refused. Persuasive cases are found outside of Texas, including Bond v. Harrel, 13 Wis.2d 369, 108 N.W.2d 552, 98 A.L.R.2d 330 (1961). It does not appear that the federal courts are in conflict with the principles set out above. United States v. Crawford Packing Co., supra, in which the Fifth Court affirmed the judgment of the District Court for the Southern District of Texas, holding that captains and deck hands operating shrimp fishing boats owned by the taxpayer were independent contractors. See also Barrett v. Phinney, 278 F.Supp. 65 (U.S.D.C., S.D.Tex.1968) and Kurio v. United States, 281 F.Supp. 252 (U.S.D.C., S.D.Tex.1968)

Judgment will be rendered for Plaintiff and counsel for Plaintiff will prepare and submit appropriate order within twenty (20) days.